## STATE OF NEVADA EX REL. R. M. DAGGETT, RESPONDENT, *v.* JOHN A. COLLINS, APPELLANT.

An election cannot be held for an office at a time not fixed by law for such election.

The phrase, "next general election," in the nineteenth section of "An Act to create a Board of County Commissioners, &c.," (Laws of 1864–5) means the general election on alternate years, commencing with 1864, and has no reference to the election of 1865, which is in some respects to be held as a special election, interpolated on the general system of biennial elections.

APPEAL from the District Court of the First Judicial District, Storey County, the Hon. R. S. MESICK presiding.

The facts are stated in the Opinion.

*R. H. Taylor*, for Appellant.

The Court in this proceeding could not oust defendant without holding that relator had title to the office. (Laws of 1864–5, p. 165, secs. 7 and 8.)

The defendant, having rightfully entered, was entitled to hold the office until his successor was legally elected. Defendant was entitled to hold until after the election in 1866. (Laws of 1864–5,

p. 416, sec. 16 ; Laws of 1864–5, p. 426, sec. 56 ; *McKune* v. *Weller*, 11 Cal. 49 ; *Bethany* v. *Sperry*, 10 Conn. 200 ; *Spencer* v. *Champion*, 9 Conn. 536 ; Const. Art. 5, sec. 8 ; Art. 6, sec. 3 ; Art. 15, sec. 11 ; Art. 17, sec. 13 ; Laws of 1864–5, p. 115, sec. 32 ; Laws of 1864–5, p. 262, secs. 18 and 19 ; Laws of 1864–5, p. 257, sec. 1 ; Chit. Black., Book 1, p. 136.)

*Dighton Corson*, District Attorney, for Respondent.

Opinion by BEATTY, J., full Bench concurring.

In the month of May, 1865, there was a vacancy in the office of Superintendent of Public Schools for the County of Storey. The Board of Supervisors appointed John A. Collins to fill the vacancy. Prior to the November election, 1865, they made a further order for an election of a Superintendent to fill a vacancy in that office which would occur by the expiration of the term of office of John A. Collins. At such election the relator, R. M. Daggett, was a candidate for the office, and having received the largest number of votes cast, and a certificate of election, and having executed a bond and qualified as Superintendent of Public Schools, demanded to be let into office.

This demand being refused, an action in the nature of a *quo warranto* was brought to remove Collins and place the relator in possession of the office.

The District Court rendered a judgment removing Collins, but refused to place Daggett in office, deciding in effect that neither one of the parties was entitled to the office. From this judgment Collins appeals.

We find nothing in the Constitution to govern this case. The sections of the laws of Nevada bearing on the question are as follows : Section sixteen of " An Act to provide for the maintenance and supervision of Public Schools," page 416 of the Statutes of 1864–5, reads as follows :

" A County Superintendent of Public Schools shall be elected in each county at the general election in the year eighteen hundred and sixty-six, and every two years thereafter, who shall take his office on the first Monday in January next succeeding his election, and hold for two years, and until his successor is elected and quali-

fied.   He shall take the oath or affirmation of office, and shall give an official bond to the county, in a sum to be fixed by the Board of Commissioners of said county."

This is the only law we can find providing for the election of Superintendents of Public Schools.   No such election can be held without some law authorizing it.   (See *Sawyer* v. *Haydon*, 1 Nevada State Reports, 75.)   Consequently the election in 1865 was wholly void and of no effect.

The next question is, did Collins hold his office subsequent to the election of 1865, or did the office become vacant without the means of filling it ?   Section nineteen of " An Act to create a Board of County Commissioners," reads as follows :

" When a vacancy shall occur in any county or township office, except the office of County Commissioner, the Board of County Commissioners shall appoint some suitable person, an elector of the county, to fill the vacancy until the next general election."   (See Laws of 1864–5, p. 262.)

Under this section, the Board of County Commissioners could undoubtedly fill the vacancy.   The important question is, when should the appointment or commission issued by that Board expire ? The law says one thus appointed shall hold " until the next general election."   The question is, when was the next general election after May, 1865 ?   The Constitution evidently contemplates a general election every alternate year, commencing with 1864.   The legislative branch of the Government has carried out that view by declaring there shall. be a general election in 1866, and each alternate year thereafter.   (See Election Law of 1866.)

But for the purpose of starting the State Government on its regular course, an election for Assemblymen, and perhaps some other officers, was by the schedule of the Constitution provided to take place in the fall of 1865.   This election for the year 1865 is called in the schedule a *general* election, but in some particulars it is rather a special than a general election.   Neither the law nor the Constitution, so far as we can see, provided for the election in 1865 of any officers except members of the Legislature and Justices of the Peace, whilst all the other State and county officers are required to be elected at the general elections held on alternate years, beginning with 1864.

We think, then, to carry out the spirit and intention of the lawmakers, we must interpret the phrase " until the next general election " to mean until the next general election at which a Superintendent can be elected. In other words, that the " next general election " means the next general election taking place on an alternate year after 1864, and not in this particular law having any reference to the election of 1865, which was interpolated on the general system of our laws by the schedule to the Constitution. Any other interpretation would operate injuriously to the public interest, and would not conform to the spirit of the law, although it might to the letter thereof. The more liberal interpretation of this law may be highly beneficial to the public, and can injure nobody.

The judgment of the Court below is reversed. The cause will be dismissed at the cost of the relator.