STATE EX REL. PATTERSON, RELATOR, *v.* LENTZ, RESPOND-
ENT.

(No. 3,611.)

(Submitted February 2, 1915. Decided February 24, 1915.)

[146 Pac. 932.]

*Offices—Election Contests—District Judges—Vacancies—Ap-
pointment—Length of Term—Constitution—Statutes—Pub-
lic Policy—Notice—Governor's Proclamation—Presumptions
—Interpretation of Statutes.*

Offices—Creation of—Vacancies.
    1.   Upon the creation of an additional judgeship in a judicial district,
a vacancy existed until filled by appointment by the governor, section
420, Revised Codes, enumerating the instances when vacancies occur, not
being exclusive.
    [As to what constitutes a vacancy in office, see note in 33 Am. Rep.
777.]

Interpretation of Statutes—Rule.
    2.   In the interpretation of statutes, every word therein used must be
given some meaning, if possible.
    [As to rules for construction of statutes, see note in 12 Am. St. Rep.
826.]

Offices—Creation—Power to Appoint—Length of Term—Constitution.
    3.   An act creating an additional district judgeship without provision
touching the length of the term or expressly authorizing the appointment
is sufficient warrant for the governor in making it, in the absence of ex-
pression therein importing futurity of selection; so likewise an expressed
intention to authorize an appointment for a term longer than that con-
templated by the Constitution is ineffective.
    [As to power to appoint officers and whether it is essentially an ex-
ecutive function, see note in 13 Am. St. Rep. 125.]

Same—Length of Term—Constitution—Power of Legislature.
    3a.   An Act authorizing an appointment for a term longer than
that contemplated by the Constitution is ineffective.

Same—District Judges—Appointment—Length of Term.
    4.   *Held,* under the constitutional and statutory provisions applicable,
that a district judge appointed to fill a vacancy brought about by the
creation of an additional judgeship, could serve only until the next gen-
eral election in point of time, and until his successor was elected and
qualified, and not until the next election at which the district judges
generally were to be selected.

Same—Election and Appointment—Public Policy.
    5.   The general policy of the state government is that election to office,
when it may be conveniently done, is the rule, and that appointments
to fill vacancies shall be effective only until the people can elect.

Same—Appointment—Election—Contest—Estoppel.
    6.   A district judge appointed for a longer term than contemplated by
the Constitution was not estopped from claiming title to the office in
*quo warranto* proceedings, by the fact that he entered into a contest for

the office at the election occurring two years before his term under the appointment expired.

Same—Vacancies—Special Elections.

7.   An election to fill a vacancy is a special election.

Same—Special Elections—Procedure—Statutes.

8.   *Held,* that the provisions of sections 452–455, Revised Codes, sufficiently prescribe the mode for holding a special election.

Same—Vacancies—Elections—Proclamation—Duty of Governor.

9.   In view of the provisions of sections 452 and 453 and 6269, Revised Codes, it is incumbent upon the governor to include in his election proclamation specific mention of the fact that in a particular judicial district a vacancy exists in the office of judge, then filled by an appointee, and that his successor is to be elected at the coming general election.

Same—General and Special Elections—Notice—Presumptions.

10.   Though the electors are presumed to know what offices are usually to be filled at a general election, they cannot be presumed to know the fact that a special election is to be held to fill an office for an unexpired term.

Same—Elections—Proclamation—Insufficiency.

11.   A statement in the proclamation of the governor giving notice of a general election, that among other officers there was to be elected "also a district judge in any judicial district where a vacancy may exist," was not such a notice of the necessity of filling a vacancy by election as required by sections 452, 453 and 6269, Revised Codes.

Same—Notice—Sufficiency—Contest Before and After Election—Rule.

12.   After an election has been held, the rule as to the necessity of official proclamation and notice thereof does not apply with the same rigor as where the proceedings are attacked before its occurrence, the rule being that no informality in the election will suffice to defeat the popular will as expressed by their votes, if in fact it appears that they had actual, though not official, notice, and voted generally.

Same—Elections—Notice—Sufficiency—Evidence.

13.   Evidence in an election contest *held* sufficient, under the rule above, to show that the electors had actual notice of an election to fill a vacancy in the office of district judge then held by appointment, though the official notice did not meet statutory requirments, and though the number of votes cast for the candidates for this office, when compared with the number received by a candidate for an office of like dignity, was small.

Original application in *quo warranto* by the State, on the relation of John E. Patterson, against Theodore Lentz, to determine title of respondent to the office of judge of the Fourth Judicial District.   Judgment for respondent, Theodore Lentz.

*Messrs. Hall & Whitlock,* for Relator, submitted a brief; *Mr. A. N. Whitlock* argued the cause orally.

It is suggested by respondent, that the sentence in section 34, Article VIII, Constitution, which provides that persons appointed to fill a vacancy shall hold until the next general election and

until his successor is elected and qualified, is controlling in this case and is absolutely mandatory, requiring an election to be held at the next biennial election, which in this case would be November, 1914, for the purpose of filling the vacancy. Our contention in this regard is that the phrase, "next general election," as used in the Constitution, means the next general election for the office in question. This construction of the above phrase has been applied not only in our own state but in a number of others, and the trend of modern authority seems to be that way. In the case of *State ex rel. Livesay* v. *Smith,* 35 Mont. 523, 10 Ann. Cas. 1138, 90 Pac. 750, this construction was given to the same language when used in the Act creating the county of Sanders, and in that case the office in question was the office of clerk of the court, the term being the same as that of the district judge, and, as the court held, measured thereby. The holding of the *Livesay Case* has up to this time not been overruled, and stands as the law on the point in question. Moreover, as above stated, it has the support of considerable authority in other jurisdictions to which reference will be made. The case has frequently arisen in California, the first case being *People* v. *Mathewson,* 47 Cal. 442. In the case of *People* v. *Budd,* 114 Cal. 168, 34 L. R. A. 46, 45 Pac. 1060, the words construed were "the next general election by the people," and they were held to mean the next election for the particular office. To these cases should be added the case of *People* v. *Col,* 132 Cal. 334, 64 Pac. 477, in which the court said that the phrase, "next general election," as used in a statute for filling a vacancy in county offices, "refers to the general election for filling a particular office to which the person is appointed, or, in other words, to the general election provided for as to all county officers." The supreme court of Washington has reached a similar conclusion in the case of *State* v. *Howell,* 59 Wash. 495, 50 L. R. A. (n. s.) 336, 110 Pac. 386. The supreme court of Nevada in the case of *State* v. *Collins,* 2 Nev. 351, has arrived at the same conclusion. In Kansas the rule is laid down in *State* v. *Cobb,* 2 Kan. 32, and in *Matthews* v. *Board of Commissioners,* 34 Kan. 606, 9 Pac. 765. To the same effect, see *Wain-*

*wright* v. *Fore,* 22 Okl. 387, 97 Pac. 831; *State* v. *Gardner,* 3 S. D. 553, 54 N. W. 606, *Ransdell* v. *Ariail,* 13 La. Ann. 459. The earlier cases most frequently cited on this point are *People* v. *Wilson,* 72 N. C. 155, and *State* v. *Philips,* 30 Fla. 579, 11 South. 922, which cases are cited in the *Livesay Case* above referred to.

Let us assume, for the purposes of this argument, that this court should overrule the *Livesay Case* in so far as the meaning of the term, ''next general election,'' is concerned, and should hold that under the Constitution Mr. Patterson's appointment was good only until the next biennial election for November, 1914, at which time his successor to fill the rest of the vacancy should be elected. Notwithstanding such a holding we take it that it is admitted that unless Mr. Lentz was duly elected to the office, Mr. Patterson, the then incumbent, would hold over upon the failure to elect his successor. In *Board of Election* v. *Wayne Circuit Judges,* 172 Mich. 430, 137 N. W. 1089, it is held that a mere temporary appointment to fill a vacancy is not terminated by an invalid election of a successor. The same is held where an election to fill a vacancy is held at a time not fixed by law for such an election. (*People* v. *Mathewson, supra; Lynam* v. *Commonwealth* (Ky. App.), 55 S. W. 686; *State* v. *Collins,* 2 Nev. 351; *People* v. *Hardy,* 8 Utah, 68, 29 Pac. 1118.) The same is held where there is no constitutional provision for filling a vacancy by election, and the statute provides that a person appointed to fill a vacancy shall hold his office until his successor is elected and qualified, it being held in such a case that the appointee will hold until the time which is regularly fixed for the qualification of persons regularly elected to the office. (*State ex rel. Ellis* v. *Commrs. of Muskingum County,* 7 Ohio St. 125.) It is likewise held where a successor is elected at a special election for which the governor issued no proclamation. (*Kenfield* v. *Irwin,* 52 Cal. 164.) If, then, we are able to establish either that there is nothing in the Constitution or laws of the state of Montana providing for an election to fill a vacancy in the office of judge of the district court, or that no

mode or method is provided by the laws of the state for holding such an election, or that the statutory requirements with reference to notice of such an election were not followed, then it necessarily follows that there was no valid election of Mr. Lentz in this case.

Now, if there is any provision in the Constitution making it mandatory that an election shall be held to fill a vacancy in the office of district judge, it must be section 34, Article VIII, but upon examination it will be found that that section simply provides that one appointed to fill a vacancy shall hold until the next general election, *etc.*, and that the person elected to fill a vacancy shall hold until the expiration of the term for which the person he succeeds was elected. Neither of these provisions says expressly that an election shall be held to fill a vacancy in the office of a district judge, nor do they provide any time or manner of holding such an election. It is true that section 6269 has a provision by the state legislature as to when an election to fill such a vacancy shall take place, but, as shown above, the operation of such section would be suspended in this case by the later Act, as referred to in this brief. Moreover, this section refers only to such vacancies as are defined in section 420, Revised Codes. We also have section 451, but that section does not designate the officer or authority who is to give notice as to the time of holding special elections or the vacancy to be filled. This difficulty is not met with in the case of vacancies in county officers, nor in the case of senators or representatives, because the proper authority in such cases is specifically designated. If there is no provision in this state authorizing any person to designate the office as vacant or to require it to be filled by special election, or to issue a call for a special election to fill such vacancy, then there is no mode or manner provided by law for supplying such office. (*People* v. *Budd*, 114 Cal. 168, 34 L. R. A. 46, 45 Pac. 1060.)

There can be no election in the absence of valid authority for holding it, the right to hold the same never being implied. (*State* v. *Gardner*, 3 S. D. 553, 54 N. W. 606.) The case of

*Matthews* v. *Board of Commrs.*, 34 Kan. 606, 9 Pac. 765, is an interesting one on the necessity of authority to hold an election. The most recent case upon this subject is the case of *Budge* v. *Gifford* (Ida.), 144 Pac. 333.   The provisions of law in the states referred to were very similar to those in our own, and in view of these holdings and the statement in the case of *State* v. *Kehoe,* 49 Mont. 582, 144 Pac. 162, we believe we are correct in our contention that it is not possible under the laws of our state to hold a valid election for filling a vacancy in the office of district judge.

We submit, finally, that if· our last contention is not sustained, then the election in this case being an election to fill a vacancy was a special election, requiring notice thereof to be given to the electors, and that no proper notice was given by anyone in authority, and that therefore, and as a result thereof, no valid election was held, in which case the plaintiff holds over.

In *State* v. *Kehoe,* above referred to, the court makes it perfectly clear that notice is necessary in the case of special elections, although the same may be held at the same time as regular elections, and it also makes it clear that an election to fill a vacancy is a special election.   (See, also, *People* v. *Weller,* 11 Cal. 49, 70 Am. Dec. 754; *State ex rel. Sampson* v. *Superior Court,* 71 Wash. 484, Ann. Cas. 1914C, 591, 128 Pac. 1054; *People* v. *Porter,* 6 Cal. 26; *People* v. *Kerwin,* 10 Colo. App. 472, 51 Pac. 530; *Beal* v. *Morton,* 18 Ind. 346; *Cook* v. *Mock,* 40 Kan. 472, 20 Pac. 259; *Wilson* v. *Brown,* 109 Ky. 229, 139 Ky. 397, 58 S. W. 595; *Secord* v. *Foutch,* 44 Mich. 89, 6 N. W. 110; *Board of Commrs.* v. *Wayne Circuit Judges,* 172 Mich. 430, 137 N. W. 1089; *State ex rel. Bolton* v. *Good,* 41 N. J. L. 296.)

The relator was appointed for a term to expire the first Monday of January, 1917.   The electors knew this situation as a matter of fact, and the law presumes that they knew of the Act creating the judgeship and also that judges were to be elected only on presidential years, and many refrained from voting at all, not knowing the appointee had to be re-elected.   Besides, the

electors knew and had a right to believe that the appointment
and commission to the relator until 1917 would stand until at
least they were notified to the contrary. The only way this could
have been accomplished was by proclamation and notice, and
as no proclamation or notice were given, the electors had a right
to rely upon the Act creating the judgeship and the appoint-
ment thereunder, and had a right to refuse to consider the elec-
tion for such office as valid and proper. (See *People* v. *Weller,
supra.*)

*Messrs. Wm. Wayne, Edw. C. Mulroney* and *Derwood Wash-
ington,* for Respondent, submitted a brief; *Mr. Wayne* argued
the cause orally.

We assert that *State ex rel. McGowan* v. *Sedgwick,* 46 Mont.
187, 127 Pac. 94, and *State ex rel. Rowe* v. *Kehoe,* 49 Mont. 582,
144 Pac. 162, are conclusive upon the question of the term of
office of the appointee, under section 34, Article VIII, Constitu-
tion, and section 6269, Revised Codes. In asserting the con-
clusiveness of these authorities, we are not unmindful of the
case of *State ex rel. Livesay* v. *Smith,* 35 Mont. 523, 10 Ann.
Cas. 1138, 90 Pac. 750. That case involved the question of the
term of office of a clerk of court in Sanders county. When the
county of Sanders was created the office of clerk of the district
court was filled by the legislature and the question was as to his
term of office. Mr. Justice Smith, writing the opinion of the
court, held that the phrase, "the next general election," meant
"the next general election held in conformity with the general
law for filling that particular office in that judicial district."
We think the holding in that case is contrary to the policy of the
law, which contemplates the preservation of the right of the
people to elect their elective officers at the earliest convenient
time and the prevention of the substantial emasculation of that
right by an extension of the appointing power. We further
maintain that the authority of the case is destroyed by the
*McGowan* and *Kehoe Cases,* cited *supra.* (See, also, *State ex rel.*

*Linn* v. *Millett*, 20 Wash. 221, 54 Pac. 1124; *Morgan* v. *Board of Commrs.*, 24 Kan. 71; *State* v. *Perkins*, 139 Mo. 106, 40 S. W. 650.)

Calling and notice of election: A consideration of this matter naturally divides itself into two subheads, and it will be so considered.

(a) *Governor's Election Proclamation.* It is our contention that if any call were necessary for an election to fill the office of district judge in the fourth judicial district, under the circumstances of this case as they will be hereinafter developed, the governor's proclamation in this respect was ample and sufficient. By it the people are advised that the election being called is expressly for the purpose, *inter alia,* of electing district judges in any and all districts where a vacancy exists. The proclamation says to the people: "If there is any vacancy in the office of district judge in your district, one of the purposes of the election now being· called is to fill that vacancy." It is true that this court in the very recent case of *State ex rel. Rowe* v. *Kehoe,* 49 Mont. 582, 144 Pac. 162, has said: "But they [the people] cannot be presumed to know generally that a vacancy has occurred which they may fill at the date of the general election, though they are presumed to know the date when the election takes place." A distinction must be borne in mind here between vacancies occurring by reason of the death, resignation or removal of an incumbent, and vacancies occurring by operation of law. Of the former vacancies the people cannot be presumed to have notice; of the latter vacancies they are charged with notice. The vacancy to occur in the office of district judge in the fourth judicial district at the election to be held on November 3, 1914, and upon the election and qualification of a successor was a vacancy created by operation of the Act creating this judgeship (Sess. Laws 1913, p. 14) ; Const., Art. VIII, sec. 34, which expressly fixes the termination of the term of office of an appointee to fill a vacant district judgeship as "the next general election and until his successor is elected and qualified," and Revised Codes, section 6269, providing that an election to

fill a vacancy in the office of district judge "*must* take place at the next succeeding general election." The people were, therefore, charged under the law with knowledge of three things, to-wit: (a) The creation of this additional district judgeship and its vacancy, *ipso facto*, on its creation (Sess. Laws 1913, p. 14); (b) that the term of relator would expire at the electon to be held November 3, 1914, and the election and qualification of a successor; and (c) that the election of a successor must take place at this election. (*Court of Commrs. of Colbert County* v. *Thurmond,* 116 Ala. 209, 22 South. 558; *Adsit* v. *Board of State Canvassers,* 84 Mich. 420, 11 L. R. A. 534, 48 N. W. 31; *People* v. *Hartwell,* 12 Mich. 508, 86 Am. Dec. 70.) The people, therefore, knew, by being charged with notice thereof, that there would be a vacancy in this office, and they knew from a reading of the governor's proclamation that a judge to fill such vacancy was to be elected at such election. It therefore follows that the governor's proclamation was ample and sufficient in all respects as a call for an election to fill the office of district judge in the fourth judicial district. (*Brown* v. *Street Lighting Dist.,* 70 N. J. L. 762, 58 Atl. 339; *Berry* v. *McCullough,* 94 Ky. 247, 22 S. W. 78; *State* v. *Thayer,* 31 Neb. 82, 47 N. W. 704; *People* v. *Cowles,* 13 N. Y. 350; Cooley's Const. Lim., 6th ed., p. 759.)

(b) *Election Notices.* In addition to the notice conveyed by the governor's proclamation and the knowledge with which the voters were charged as to the matters heretofore discussed, the election notices posted in every precinct in each of the counties of Ravalli and Mineral by order of the boards of county commissioners of said counties, under the provisions of Revised Codes, section 452, expressly named "One judge of the fourth judicial district" as one of the officers to be elected at said election. These election notices were officially issued and posted in each of the precincts in Ravalli and Mineral counties. The calling and notice of election in these two counties, therefore, wholly complied with the most exacting requirements of official notice.

Finally, it should be noted on this phase of the discussion that official notice of an election to fill a vacancy in the office of district judge is nowhere required.   A search for any requirement of official notice either in the Constitution or the statutes is in vain.   It is entirely competent for the legislature to dispense with all official notice of such an election.   (*Powell* v. *Jackson Common Council*, 51 Mich. 129, 16 N. W. 369.)   The absence of any requirement of official notice of such an election would, in itself, distinguish the instant case from that of *State ex rel. Rowe* v. *Kehoe*, 49 Mont. 582, 144 Pac. 162, where the decision is based upon the mandatory requirement of notice.

Insufficiency or lack of call; cure by actual notice: Assuming now, however, for the purposes of the argument, that the proclamation of the governor was insufficient as a call for an election to fill this office, and also that some further official notice of such an election should have been given, what is the result of such claimed insufficiency or lack?   Insufficiency of the call or notice of election does not, *ipso facto*, render the election invalid.   On the contrary, actual notice to the voters and general participation in the election cures insufficiency, or lack of, official call or notice.   (*Adsit* v. *Board of State Canvassers*, 84 Mich. 420, 11 L. R. A. 534, 48 N. W. 31.)   In the instant case the relator is in the unfavorable position of having invited an election to fill this office by filing his nominating petition as the first candidate, then of having done his best to give general notice throughout the district of his candidacy and the fact that the office would be filled at the ensuing election, of having addressed meetings in his own behalf announcing these facts, of having made similar announcements in the newspapers and by the distribution of campaign cards, and then when the people accepted his representations in regard to the matter and the election had been held on the faith of his representations thus made, repudiating the whole thing and blandly telling the people that there could be no election for this office, as his term would not expire for two years more, and that the campaign for and election of a judge was merely engaged in as a more or less

pleasant pastime.     (*State ex rel. Berge* v. *Lansing*, 46 Neb. 514, 35 L. R. A. 124, 64 N. W. 1104; *People* v. *Brenham*, 3 Cal. 477; *Odell* v. *Rihn*, 19 Cal. App. 713, 127 Pac. 802; *State ex rel. Mullen* v. *Doherty*, 16 Wash. 382, 58 Am. St. Rep. 39, 47 Pac. 958; *State* v. *Skirving*, 19 Neb. 497, 27 N. W. 723; *Commonwealth* v. *Smith*, 132 Mass. 289; *Dishon* v. *Smith*, 10 Iowa, 212; *Berry* v. *McCollough*, 94 Ky. 247, 22 S. W. 78; *State* v. *Thayer*, 31 Neb. 82, 47 N. W. 704; McCrary on Elections, 3d ed., par. 143 *et seq.*)

Relator's right to raise question: Finally, we come now to the question whether, in any event, the relator is in a position to raise the question of the sufficiency of the call for and notice of said election. Relator nowhere alleges or even intimates that he was misled in any way by reason of the claimed insufficiency of the call and notice of this election; nor that he was deprived of the right to vote for said office by reason thereof; nor that a sufficient number of other voters were so misled or deprived of the privilege of voting for said office to have changed the result. In this situation defendant contends that the relator is not entitled to raise this question at all, for he shows no injury resulting from the insufficiency of said call and notice, assuming it to have been insufficient. (*Reid* v. *Lincoln County*, 46 Mont. 31, 125 Pac. 429; *Potter* v. *Furnish*, 46 Mont. 391, 128 Pac. 542.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This is an original proceeding in the nature of *quo warranto* to determine the title of respondent to the office of judge of the fourth judicial district. After the issues had been made up, the parties entered into a stipulation as to the facts, and settled them in a formal written statement. The controversy was submitted on this statement, which discloses the following: By an Act approved February 11, 1913 (Laws 1913, Chap. 14, p. 14), a third judgeship was created in the fourth judicial district. Section 2 of the Act provides: "The governor shall appoint some fit and qualified person as additional judge of the said fourth judicial

district to hold his office until the first Monday of January, 1917, or until his successor is duly elected and qualified.'' On February 21, in pursuance of the Act, the governor appointed the relator to the office, the commission issued to him stating that he was to hold the same until the first Monday in January, 1917. The relator qualified at once and entered upon and continued in the discharge of the duties appertaining to the office, until this controversy arose. Prior to the general election held on November 3, 1914, no party nominations were made for the election of a successor to the relator; but more than thirty days prior to the election the relator, the respondent, and Welling Napton, Esq., all possessing the necessary qualifications for the office, circulated petitions and secured the number of signatures required to nominate themselves as independent candidates. In due time these petitions were filed with the secretary of state, and thereafter the names of all the nominees were by him duly certified to the clerks of the counties composing the district, *viz.*, Missoula, Ravalli, Sanders and Mineral, to be printed upon the official ballots in the appropriate column with other independent candidates. Theretofore, and on August 6, the governor had issued his proclamation calling for the general election for November 3. The proclamation enumerated all the officers to be elected throughout the state, including state, district and county officers, but contained no reference to the office of district judge, other than the following: ''Also a district judge in any judicial district where a vacancy may exist.'' Within the time required by law, the proclamation was published, and notice of the election was posted in the voting precincts in the several counties, by authority of their respective boards of commissioners. In Ravalli and Mineral counties the notices informed the electors that one judge was to be elected in the district. This information was omitted from those published and posted in Sanders and Missoula counties. In all the counties the official ballots had printed upon them a separate column headed ''Independent,'' except that in Mineral county the heading was ''Independent Party.'' The names of the candidates appeared

therein under the designation, ''For Judge of the Fourth Judicial District.'' During the thirty days preceding the election, the several candidates were active in bringing their respective claims to the attention of the electors throughout the district, by advertisements and notices published at the various county seats and at other towns in the district. These publications were made at the instance of the candidates themselves or of friendly advocates of their respective claims. The statement published at the instance of the relator called the attention of the electors to the fact (which it was suggested many of them did not know) that the office of district judge then held by him was put in issue at that time. It also stated, in substance, that while the relator was of the opinion that his tenure under his appointment would not expire until the first Monday in January, 1917, since a question had arisen on the subject too late to permit him to present himself for nomination on the Democratic ticket, in order to avoid all future question as to his right he was seeking an election on the Independent ticket to succeed himself. The relator also caused to be distributed among the electors 7,500 cards, announcing his candidacy. These cards had printed upon them the substance of the statement referred to above. The respondent had distributed in the same way 8,000 cards, announcing his candidacy, and he also caused to be posted, in prominent places in every precinct in the district, placards upon which were printed his portrait and the announcement of his candidacy. Napton caused to be distributed 6,000 candidate's cards. The relator and the respondent each wrote and mailed to individual electors in the district many hundreds of personal letters, announcing their respective candidacies and urging their claims, In addition to these means of publicity, the several candidates visited a great number of the precincts in the district; the respondent visiting all, except five small ones in remote localities. Candidates for other offices, as well as party speakers, who participated in the campaign for state and local offices, on many occasions and in different places called the attention of the electors to the necessity of voting for some one of the candidates

for the office of district judge.   The numbers of registered voters in the counties were: In Missoula county, 4,198; Ravalli county, 2,344; Sanders county, 1,353; Mineral county, 720—a total of 8,615.   The votes cast for the office of district judge were: In Missoula county, 1,749; Ravalli county, 582; Sanders county, 221; Mineral county, 537—a total of 2,889, or an average of 33⅓ per cent of the whole number of registered votes.   The votes cast for the candidates in each county were:

|                | Missoula County. | Ravalli County. | Sanders County. | Mineral County. |
|----------------|------------------|-----------------|-----------------|-----------------|
| Lentz.........  | 770              | 134             | 61              | 357             |
| Patterson......  | 640              | 220             | 135             | 118             |
| Napton.........  | 339              | 228             | 25              | 62              |

For the office of associate justice of the supreme court, three candidates, whose names appeared on the party tickets, received, in Missoula county, 3,698; Ravalli county, 1,735; Sanders county, 1,135; Mineral county, 487—a total of 7,055, or an average of about 82 per cent of the whole number of registered votes.   Upon the ascertainment by the state board of canvassers of the result, the governor issued a certificate of election to the respondent. He thereafter took the oath of office, and on January 4 of this year assumed possession of and began to discharge the duties appertaining to it.

The claim is made that by his appointment by the governor under authority of the statute, *supra,* the relator became entitled to hold until the first Monday in January, 1917, and that the respondent has unlawfully intruded himself into and usurped the office.   The claim is also made that the admitted facts disclose that, in so far as the election included candidates for the office of district judge, it was invalid, in that it had not been proclaimed by the governor, and hence that the right of the relator to retain the office under his appointment was not affected by it.

As we understand counsel for the relator, they concede, at least do not controvert, the proposition that, upon the approval [1] of the Act creating the additional judgeship, there was *ipso facto* a vacancy in the office until it was filled by the gov-

ernor by appointment. We shall not stop to consider again the question whether this is so. Whatever may be the rule in other jurisdictions, we deem it settled in this state by the decision in *State ex rel. Buckner* v. *City of Butte,* 41 Mont. 377, 109 Pac. 710. An office without an incumbent is vacant, whether it never had an incumbent or the vacancy has been caused by death of the incumbent or by the happening of any other one of the contingencies enumerated in section 420 of the Revised Codes, or is the result of the failure of the electors to choose a successor to the incumbent, when the term attached to the particular office has expired and the incumbent is not authorized to hold over until his successor has been elected and qualified. For, though the statute declares that a vacancy occurs upon the happening of any of the events therein enumerated, it is by no means exclusive, as is apparent from the decision in *State ex rel. Jones* v. *Foster,* 39 Mont. 583, 104 Pac. 860, wherein it was held that, since the Constitution fixes the term of the clerk of the district court at four years, a vacancy occurs, upon the expiration of four years, to be filled by appointment, if the people fail to elect a successor to the prior incumbent. As soon as a vacancy occurs, the appointing power may act (Const., sec. 7, Art. VII); but since, as we shall see later, the Constitution does not distinguish vacancies into different classes on account of the exigencies which occasion them, the term for which the appointment holds good is governed by the limitations upon the appointing power therein prescribed.

There can be no doubt, we think that by the Act, *supra,* creating the additional judgeship, the legislature intended that the appointment made by the governor should hold good until the first Monday in January, 1917, and until a successor should be elected and qualified. The person who drafted the Act doubtless inadvertently used the disjunctive ''or'' instead of the conjunctive ''and,'' as found in the Constitution, where the clause following the conjunctive is used in fixing the tenure of persons appointed to vacancies in elective offices. The two other alternatives are either to attach no meaning at all to this clause, or else

to hold that the legislature intended to provide by implication that a successor to the first appointee should be chosen by the people at the next general election following the appointment. The first of these latter alternatives we cannot accept, because every word in a statute must be given some meaning, if it is possible to do so (*State ex rel. Anaconda C. Min. Co.* v. *District* [2] *Court,* 26 Mont. 396, 68 Pac. 570, 69 Pac. 103); nor can we accept the second, because the legislature would doubtless have expressly so provided if it had intended that a successor to the governor's appointee should be elected at the next general election.   Evidently it entertained the view that the expression, "next general election," was to be given the import assigned to it by this court in *State ex rel. Livesay* v. *Smith,* 35 Mont. 523, 10 Ann. Cas. 1138, 90 Pac. 750, *viz.,* the next general election of district judges throughout the state.   This case we shall have occasion to consider later.   We have said this much because counsel have devoted some space in their briefs to a discussion of the meaning of the clause referred to.   It is not important, however, to determine just what the intention of the legislature was.   The vital question at issue on this branch of the case is whether, under the express limitation of the Constitution, the governor's appointee could hold for the remainder of the term or only until his successor, elected at the biennial election, had qualified.   An Act creating the office without any provision touching the length of the term, or expressly authorizing the [3] appointment, would have been sufficient warrant for the action of the governor in making it, in the absence of some expression in the Act importing futurity of selection.   (*People ex rel. Snyder* v. *Hylan,* 212 N. Y. 236, 106 N. E. 89.)   The failure of the legislature to give authority would not of itself impose a limitation upon the power of the governor.   For the [3a] same reason, any expressed intention to authorize an appointment for a longer term than the fundamental law contemplates is ineffective.

The provisions of the Constitution pertinent here are the following: "The state shall be divided into judicial districts, in

each of which there shall be elected by the electors thereof one
[4] judge of the district court, whose term of office shall be four
years, except that the district judges first elected shall hold their
offices only until the general election in the year one thousand
eight hundred and ninety-two (1892), and until their successors
are elected and qualified. Any judge of the district court may
hold court for any other district judge, and shall do so when
required by law." (Art. VIII, sec. 12.)

"Vacancies in the office of justice of the supreme court, or
judge of the district court, or clerk of the supreme court, shall
be filled by appointment, by the governor of the state, and
vacancies in the offices of county attorneys, clerk of the district
court, and justices of the peace, shall be filled by appointment,
by the board of county commissioners of the county where such
vacancy occurs. A person appointed to fill any such vacancy
shall hold his office until the next general election and until his
successor is elected and qualified. A person elected to fill a
vacancy shall hold office until the expiration of the term for
which the person he succeeds was elected." (Art. VIII, sec. 34.)

The sections of the Revised Codes enacted to give effect to
these provisions are: "The term of office of judges of the district
court begins on the first Monday of January next succeeding
their election." (Rev. Codes, sec. 6267.)

"If a vacancy occur in the office of judge of a district court,
the governor must appoint an eligible person to hold the office
until the election and qualification of a judge to fill the vacancy,
which election must take place at the next succeeding general
election, and the judge so elected holds office for the remainder
of the unexpired term." (Sec. 6269.)

Section 450 declares what is a general election, and fixes the
time for holding it, *viz.:* "The first Tuesday after the first Mon-
day of November, in the year 1894, and in every second year
thereafter."

Section 451 defines a special election as one held to supply a
vacancy in an office.

Section 12 of Article VIII, *supra,* was considered in connection
with other provisions of the Constitution, in *State ex rel. Jones
v. Foster,* cited above. It was there said: "In adopting it the
convention had three purposes in view: (1) To provide for the
division of the state into districts; (2) to provide for district
judges and to fix their term of office; and (3) by way of excep-
tion, to fix the term of office of those first elected, so that they
would hold until the general election in 1892, and until their
successors should be elected and qualified. But for the excep-
tion, those first elected would also have held for the term of four
years. The purpose of it was to so adjust the term of those
first elected that thereafter the election would fall regularly upon
presidential years, and be uniform throughout the state." It
was also held that the clause, "and until their successors are
elected and qualified," is a part of the exception, and does not
modify the clause definitely fixing the term of the judges to be
subsequently elected. The result is that, upon the expiration
of the four-year term, the office of district judge becomes vacant
by operation of law. In *State ex rel. McGowan v. Sedgwick,* 46
Mont. 187, 127 Pac. 94, the court considered at length the sev-
eral provisions of the Constitution, including section 34 of Arti-
cle VIII, *supra,* relating to vacancies in office, to the tenure of
persons appointed to fill them, and to the time when their suc-
cessors are to be chosen by the people. Speaking through Mr.
Justice Holloway the court said: "A reference to the several
provisions of the Constitution above discloses that in every in-
stance of a vacancy in an elective office, where the vacancy is to
be filled by appointment, the appointee shall hold only until the
people who elected his predecessor have the first opportunity to
fill the office with a person of their own choice; and this rule is
general, applies to every state, district and county office, unless
an exception is made in favor of one appointed to a vacancy in
the office of county commissioner. There is not any reason ap-
parent or suggested why an exception in his favor should be
made, and that there is not any express exception is conceded."

The personal view of the writer, as expressed in *State ex rel. Rowe* v. *Kehoe*, 49 Mont. 582, 144 Pac. 162, is that the rule includes also county offices, the term of which is only two years. However this may be, the general policy of our government, as [5] indicated by these provisions, is that election to office by the people, when it may be conveniently done, is the general rule, and that appointments to fill vacancies made to meet the requirements of public business shall be effective only until the people may act. (*State ex rel. McGowan* v. *Sedgwick, supra.*) That this was the intention of the convention is clearly indicated by the last two sentences in section 34, *supra.* By the first, the term of the appointee is definitely limited to the occurrence of the general election and the lapse of sufficient time thereafter for the qualification of the elected incumbent, whereas, under the latter, the elected incumbent holds for the remainder of the term. The first implies, also, that, if the elected incumbent for any reason fails to qualify, the title of the appointee holds good to the end of the term; but, though this is so, his title lapses upon the election and qualification of his successor. Therefore, the provision being exclusive and hence prohibitory (Const., Art. III, sec. 29), the legislature cannot extend the term beyond that thus definitely fixed. The governor is equally without power to do so.

There is a conflict in the decisions as to the meaning of the phrase, "until the next general election," as used in section 34, *supra,* and elsewhere in the Constitution, one view being that it means the next general election in point of time, and the other that it means the next general election for the particular office. A number of cases illustrating these divergent views are cited in the note to *Wendorff* v. *Dill,* 50 L. R. A. (n. s.) 359, (83 Kan. 782, 112 Pac. 588), among them *State ex rel. Livesay* v. *Smith, supra.* In this case it was definitely held that the expression refers to the next general election for the particular office; in that instance, clerk of the district court. That the court in so holding fell into error becomes apparent when we recognize and give force to the general theory of the Constitution on the subject of how vacancies in office are to be filled, and realize that

the rule adopted in that case renders it impossible ever to hold an election to fill a vacancy in any of the offices enumerated in section 34, *supra*. Obviously, if an appointee to fill a vacancy in any of the offices enumerated is entitled to hold until the general election for that office at which is chosen an incumbent for the ensuing regular term, a vacancy in any one of them can never be filled by election as distinguished from appointment, with the result that the last sentence in the section is entirely without meaning. The preceding sentence would then be read: "A person appointed to fill any such vacancy shall hold his office until the expiration of the current term, and until his successor shall be elected and qualified." And the last sentence would be disregarded as entirely without meaning. This may not be done, for it would violate the fundamental rule of construction applicable, *viz.*, that effect must be given, if possible, to the whole instrument under consideration and to every section and clause of it. (*State ex rel. Anaconda C. Min. Co.* v. *District Court, supra; Montana Coal & C. Co.* v. *Livingston,* 21 Mont. 59, 52 Pac. 780; Cooley's Const. Limitations, p. 72.) The conclusion announced in *State ex rel. Livesay* v. *Smith* was the result of oversight, in failing to notice the import of the last sentence in the section. For this reason it was erroneous, and the decision must be overruled.

It will be noted that the provision mentions vacancies generally, without regard to what may be the cause of them. Hence, as was stated above, it must include a vacancy which exists in a newly created office for which no incumbent is named. If the legislature had merely created the office and said nothing as to the appointment, or, besides creating the office, had added that the incumbent appointed by the governor to fill it should hold until the next general election and until his successor should be elected and qualified, the Act would not only have been in conformity with the evident intention of the provision of the Constitution, but also in entire harmony with the interpretation given it by the legislature itself in enacting section 6269 of the Revised Codes, *supra*. Interpreted, as it must be, to mean that the gov-

ernor was to fill the office for the remainder of the term, it is to this extent invalid, though it must be conceded that the relator was entitled by virtue of his appointment, under the terms of the Constitution, to hold until he had been displaced by a successor legally elected by the people. The clause, "and until his successor is elected and qualified," is an express guaranty of this right. (*Board of Election Commrs.* v. *Wayne Circuit Judges,* 172 Mich. 430, 137 N. W. 1089; *People* v. *Mathewson,* 47 Cal. 442; *State* v. *Collins,* 2 Nev. 351; *People* v. *Hardy,* 8 Utah, 68, 29 Pac. 1118.)

In this connection it may be remarked that the relator is not [6] estopped from claiming title to the office under his appointment, by the fact that he entered into the contest for it with his opponents. If the election was void for any reason, it conferred no right upon the respondent. The conduct of the relator did not amount to a resignation. His title remained perfect until he had been displaced by a successor elected by the people in pursuance of a method declared or recognized by law to be effective of that result. The doctrine of estoppel has no application. Neither does the certificate issued to the respondent by the governor affect relator's right. It is nothing more than the written evidence of title which the governor, as chief executive of the state, is authorized to issue to a successful candidate upon the ascertainment of the result of an election. If the election is void, the governor is not required to issue a certificate, and, if he does, it confers no right. The appointee cannot be divested of his title otherwise than by resignation or the happening of some other one of the contingencies enumerated in section 420 of the Revised Codes, cited heretofore.

One basis of the contention that the election was void is the assumption that, in so far as it included a district judge, it was without authority of law, because the phrase, "until the next general election," means the next election at which district judges are to be elected throughout the state. This contention has been disposed of by the foregoing discussion.

Under the interpretation we have given the provision of the Constitution, the people were entitled to elect some person to fill

the office at the election in November, 1914. The legislature, in enacting section 6269, *supra,* which was left unchanged by the invalid provision of the Act of 1913, specifically required that it should be held. Whether or not the result was effective to vest the respondent with title depends upon the answers which must [7] be given to these questions:

(1) Is an election to fill a vacancy a special election?

(2) Has the legislature sufficiently prescribed the mode for holding such an election?

(3) Was this mode substantially pursued by the election officers, in the making of proclamation and giving notice? And

(4) Even though the formalities of proclamation and notice were omitted, must we, now that the election is over, accept the result as an authoritative declaration of their wishes by the people?

The first of these inquiries is answered in the affirmative by the statute (Rev. Codes, sec. 451), which declares: "Special elections are such as are held to supply vacancies in any office, and are held at such times as may be designated by the proper officer or authority."

The second must also be answered in the affirmative. In *State ex rel. Rowe* v. *Kehoe, supra,* the various provisions of the Codes [8] relating to the manner of calling special elections (sections 452–455) to fill vacancies in county offices were considered. It was said that, while they are crude and do not in the most appropriate terms confer the necessary power upon the boards of county commissioners, nevertheless they are sufficient for this purpose. With reference to the duty of the governor, under section 452, it was said that apparently proclamation is required of him only when it is necessary to fill offices for the regular ensuing term. When, however, we consider sections 452 and 453 in connection with the provision of the Constitution and the statute (section 6269) relating to the filling of the office of district judge held by an appointee of the governor, it becomes clear that it is incumbent upon the governor to include in his proclamation [9] specific mention of the fact that in a particular district,

where this condition exists, an election is to be held to fill the office for the rest of the term.   He is the proper authority to proclaim the regular election for all officers, and section 6269 makes it incumbent upon him to include in his proclamation mention of the fact that a state office held by his appointee is to be filled by election.   The several provisions of the· Constitution, by specifically fixing the tenure of an appointee to office to fill such a vacancy with reference to the general election, as specifically fix the date of that election as they do the date of the election of a successor, and make it as much the duty of the governor to include in his proclamation mention of the necessity to hold an election in a given district.   Section 452 does not so declare in express terms; yet when we note that it does require proclamation of the general election, and also that section 6269 declares that the special election must be held at that time, the conclusion cannot be avoided.   That section 452 also requires the governor to make special proclamation for an election to fill a vacancy in the office of state senator or member of the house of representatives does not at all imply that he is not to convey the information to the electors of a particular district when it is necessary for them to elect an incumbent for the office of district judge.   It may be said that, since the date of the general election if fixed by section 450, the requirement of section 453 that the proclamation shall state the time of the election is superfluous; nevertheless the other requirement that the proclamation state [10]  the offices to be filled is necessary for, though the people may be conclusively presumed to know what offices are usually to be filled at the general election, they cannot be presumed to know the fact that a special election is to be held to fill an office for an unexpired term.   Hence the legislature required that they, or the portion of them interested, should be informed of the fact in order that they might exercise their right intelligently.

The third inquiry must be answered in the negative.   The language of the proclamation, ''also a district judge in any judicial [11]  district where a vacancy may exist,'' embodies no statement of fact.   It left the people in any district to ascertain

for themselves whether the emergency existed requiring them to elect a judge, instead of informing them definitely that such an emergency existed and that they should proceed with the election.

The answer to the last inquiry involves some difficulty. In *State ex rel. Rowe* v. *Kehoe, supra,* this court adopted the view that, since the statute requires official proclamation and notice of the election, in the absence of them the election would be invalid. The question in the case was whether, in the absence of official proclamation and notice of any kind, the clerk was authorized to print upon the ballot the names of two candidates to fill a vacancy in the office of sheriff. It was determined that he could not. The notice the electors would have in such case would depend entirely upon the disposition of the candidates themselves to give publicity to their candidacies. In that case the question at issue arose out of the proceedings of the clerk prior to the election. After the election has been held, however, the rule as to the **[12]** necessity of official proclamation and notice does not apply with the same rigor (*Potter* v. *Furnish,* 46 Mont. 391, 128 Pac. 542; *State ex rel. Kehoe* v. *Stromme,* 49 Mont. 25, 139 Pac. 1002); the validity of the result being determined by an ascertainment from the evidence, whether the electors generally had notice and generally indicated their choice of candidates. In the first instance, there is involved only the right of the candidates to have their respective names submitted to the electors. In the second, while the respective rights of the claimants to serve the people are at issue, there is involved the fundamental right of the people to be served by a person chosen by themselves in preference to one put into the office by the appointing power to meet a temporary emergency. The underlying principle is that, inasmuch as the people have the right to choose officers to serve them no informality in the election will suffice to defeat their will, as expressed by their votes, if in fact it appears that they had actual notice and did indicate their choice. This rule is especially applicable to cases in which the Constitution and statutes enacted in pursuance thereof require the election to be held on the date of the general election. So, while some of the courts hold that

want of official notice will vitiate the election after it has been held (*People* v. *Weller,* 11 Cal. 49, 70 Am. Dec. 754; *People* v. *Kerwin,* 10 Colo. App. 472, 51 Pac. 530; *Beal* v. *Ray,* 17 Ind. 554; *People* v. *Thompson,* 67 Cal. 627, 9 Pac. 833), the weight of authority is in favor of the rule that if it appears from the evidence that the people had actual notice that none of them have been misled, so that they refrained from voting on that account, and that they voted generally, even though it is apparent that many refrained from voting because of their indifference as to the result, the election should be upheld. The following cases, which arose out of conditions not essentially different from those disclosed in this case, support this rule: *Berry* v. *McCollough,* 94 Ky. 247, 22 S. W. 78; *Dishon* v. *Smith,* 10 Iowa, 212; *Rodwell* v. *Rowland,* 137 N. C. 617, 50 S. E. 319; *Commonwealth* v. *Smith,* 132 Mass. 289; *State* v. *Skirving,* 19 Neb. 497, 27 N. W. 723; *State* v. *Lansing,* 46 Neb. 514, 35 L. R. A. 124, 64 N. W. 1104; *State* v. *Doherty,* 16 Wash. 382, 58 Am. St. Rep. 39, 47 Pac. 958; *Adsit* v. *Board of State Canvassers,* 84 Mich. 420, 11 L. R. A. 534, 48 N. W. 31; *State* v. *Thayer,* 31 Neb. 82, 47 N. W. 704; *State* v. *Orvis,* 20 Wis. 235; *Jones* v. *Gridley,* 20 Kan. 584; *People* v. *Cowles,* 13 N. Y. 350. (See, also, McCrary on Elections, sec. 143; Mechem on Public Officers, sec. 174.) From an examination of these cases, it is apparent that the inquiry in each of them was directed to ascertain whether the circumstances justified the inference that the people had actual notice. The rule observed in them, we think, should be applied to this case.

In two of the counties of the fourth district the notice posted [13] in the several precincts announced that a judge was to be elected. During the thirty days preceding the election all of the candidates were active in giving publicity to this fact throughout the district. Cards were distributed by them liberally, in all more than 20,000. Notices were published in various newspapers throughout the district. Public speakers called the attention of the voters to it. Hundreds of personal letters were written by the candidates to individual electors. The respondent visited every precinct in the district in the interest of his

candidacy, except five small ones, and in all of them in prominent places were posted his announcement. The other two candidates visited a great number of precincts. Finally, there was put into the hands of every voter on election day a ballot upon which were printed the names of the candidates in a separate column under the proper designation, so that each elector who cast a vote had only to use his eyes to see that he was entitled to vote for one person for the office of district judge. Added to this, both by the Constitution and section 6269, *supra,* every voter was notified that he was entitled to vote for one candidate for every office named upon the ballot. Aside from the omission of the formal proclamation and notice anterior to the election, we have here disclosed all the concomitants that usually accompany an election. These circumstances, it would seem, are sufficient to put beyond question the fact of actual notice. It is true that, as compared with those received by the candidates for associate justice of the supreme court, the sum of the votes received by the candidates for the local judgeship was comparatively small. But when we call to mind that doubtless many refrained from voting because of the probable difference of opinion as to whether a judge was to be elected, and others because the candidates were not named in their party tickets, and were therefore overlooked, and still others because they were indifferent, the disparity in the number of votes cast is not alone sufficient to overturn the presumption arising upon the other admitted facts and circumstances enumerated above.

On the whole, we think the evidence discloses such an actual notice as to require us to adopt the conclusion that the election of the respondent must be upheld as valid, and that he is entitled to the office.

It is so adjudged.

MR. JUSTICE SANNER and MR. JUSTICE HOLLOWAY concur.