COMMISSIONERS OF CUSTER COUNTY, appellants, *v.* COMMIS-
SIONERS OF YELLOWSTONE COUNTY, respondents.

CONSTITUTIONAL LAW — *Custer county, apportionment of debt of—
Act creating Yellowstone county construed.*— The act of February 26,
1883, creating the county of Yellowstone, and apportioning the debt of
Custer county between such counties, imposed a legal obligation upon
Yellowstone county to pay to Custer county, in the manner provided
in the act, its proportion of the indebtedness as it existed upon the
3d of March, 1883. And the provision of such act, that the com-
missioners of each county should meet and adjust the indebtedness,
was not intended to create a tribunal which should have the exclusive
power and jurisdiction to determine the amount of such indebtedness.
The determination of such question is judicial in its nature, and the
legislature had no power to deprive the courts of jurisdiction thereof.
And upon the refusal of the commissioners of Yellowstone county to
meet for the purpose of apportioning such indebtedness, as required by
such act, the county of Custer had the right to maintain an action for
the recovery of the amount of the indebtedness due it.

SAME — *Cost of court-house, etc., how determined.*— Under section
2 of such act the cost of erecting and furnishing the court-house,
county jail, and poor-house of Custer county, as shown by the books
of the county commissioners, was, for the purpose of apportionment,
to be deducted from the total amount of the indebtedness of Custer
county.

SAME — *Taxable property of Custer county.*— Such act provided
that "the indebtedness shall be divided between said counties in pro-
portion as the taxable property in each county bears to the entire tax-
able property of the present county of Custer, taking as a standard
thereof the assessment for the year 1882." *Held,* that the phrase " tax-
able property " meant property liable to taxation; and that property
exempt by law from taxation, although it appeared on the assessment,
should not be estimated in determining the value of the taxable prop-
erty of Custer county

*Appeal from First District, Gallatin County.*

THE opinion states the facts.

STREVELLE & GARLOCK, for the appellant.

WILLIAM WALLACE, Jr., E. W. & J. K. TOOLE, and SAN-
DERS, CULLEN & SANDERS, for the respondents.

GALBRAITH, J.   The legislative assembly of the territory of Montana, by an act approved February 26, 1883, erected certain portions of what had formerly formed a part of Custer county, and a small portion of Gallatin county, into a new county, to be called the county of Yellowstone, the respondent in this case.   It was provided in the act that it should take effect from and after its passage.   Section 1 contained this provision: "All laws of a general nature applicable to the several counties of this territory, and the officers thereof, are hereby made applicable to the county of Yellowstone, and the officers who may hereafter be elected or appointed therein, except as otherwise provided in this act."

Section 2 of this act provided that "the indebtedness of the county of Custer, as the same shall exist on the 1st day of March, A. D. 1883, shall be apportioned between said county and the county of Yellowstone, by first deducting from said indebtedness all money on hand in the treasury of said county of Custer, and all moneys belonging to said county in the possession or under the control of the county treasurer; also deducting the cost of erecting and furnishing court-house, county jail, poor-house, and also the valuation of all real estate owned by said county, as shown by the books of the county commissioners; the remainder of the indebtedness shall be divided between said counties in proportion as the taxable property in each county bears to the entire taxable property of the present county of Custer, taking as a standard thereof the assessment for the year 1882."

Section 3 was as follows: "The county commissioners of Custer and Yellowstone counties shall meet at the court-house in the town of Miles on the first Monday of March, A. D. 1883, to adjust the indebtedness between said counties upon the basis named in section 2 of this act.   When adjusted, if the county of Yellowstone shall be liable for any part thereof, it is hereby made the duty of the county commissioners of said last-named county to cause to be issued to

the county commissioners of Custer county a warrant or warrants therefor, which, in the aggregate, shall equal the amount of said indebtedness for which the county of Yellowstone shall, under the adjustment mentioned, be liable; and the said warrant or warrants, if not paid on presentation to the treasurer of Yellowstone county, shall be by said treasurer indorsed, 'not paid for want of funds in the treasury,' and shall thereafter bear like interest as other county warrants indorsed in like manner issued prior to March 6, 1883."

Section 4 provides as follows: " An election shall be held in the county of Yellowstone on the second Monday of April in the year 1883, . . . for the election of the following officers, to wit: . . . three county commissioners."

Section 5 appointed certain persons commissioners of Yellowstone county, who, upon giving bond and taking the oath required by law of the commissioners of other counties in the territory, should exercise the duties of commissioners until their successors should be elected and qualified as provided in section 4.

This action was brought to compel the payment by the respondent of the indebtedness alleged to be due from it to the appellant, caused by virtue of the above act. The appeal is from the judgment rendered in consequence of the demurrer to the complaint having been sustained, and the appellant having refused to amend its complaint, and having declared its intention to rely and stand thereon.

The complaint was in substance as follows: It relates to the creation of Yellowstone county as provided for by the above act, and that the officers provided for by section 4 thereof were elected and qualified. That on the 1st day of March, 1883, the indebtedness of Custer county was $241,516.20. That on the 1st day of March, 1883, the money in the treasury and in the possession of the appellant was $9,897.71. That on March 1, 1883, the public buildings within Custer county and belonging to it, and

the cost for the erection and furnishing of the same, as shown by the books of the county commissioners, were as follows: " One court-house, which cost to erect and furnish $38,940.50; one jail, which cost to erect and furnish $14,350; one poor-house, which cost to erect and furnish $9,904.99."

That on March 1, 1883, all the real estate belonging to appellant, valued as shown by the books of the county commissioners, was as follows: "Real estate, on which the court-house and buildings connected therewith are situate, valued at $2,800; real estate upon which the county poorhouse is situate and buildings connected with such poorhouse, valued at $1,634. That the indebtedness of the appellant on the 1st of March, 1883, after deducting the money in the treasury of and that belonging to the appellant, the sums which it cost to erect and furnish a courthouse, poor-house and jail, and the valuation of the real estate of the appellant, as above set forth, remaining to be apportioned between the appellant and respondent, was $164,000. That the taxable property of the county of Custer for the year 1882, as shown by the assessment of the county for that year, was the sum of $3,844,580.

The complaint then alleges facts which show that, taking this assessment as a standard, as provided in section 2 of the act, the portion of the above indebtedness, viz., $164,000, which it is alleged should be apportioned to Yellowstone county, as provided for by said section, was $39,058.24; and that which it is alleged should be apportioned to Custer county, was $124,941.76. But the complaint further alleges that, of the above assessment of Custer county for 1882, $2,460,000 thereof was property belonging to the Northern Pacific Railroad Company, a corporation organized and established by " An act of congress, entitled an act granting lands to aid in the construction of a railroad and telegraph line from Lake Superior to Puget sound on the Pacific coast, by the northern route;" which said act was approved July 2, 1864. That this property consisted, as shown by the assessment, of two hundred and forty-six miles of railroad, with rolling stock,

buildings, etc., which were built, constructed and used upon the right of way granted by the above act of congress to the railroad company; and that this property was not assessable or taxable within the county of Custer in 1882. That of this property belonging to the railroad, $130,000 was within that portion of Custer county which was detached therefrom by virtue of the act of February 26, 1883, and placed within the bounds of the county of Yellowstone; and $2,030,000 thereof was in that portion of Custer county which remained after the creation of Yellowstone county. It is then alleged that if this property belonging to the railroad be excluded from the assessment of Custer county for 1882, there would remain as the true assessment of Custer county for that year the sum of $1,384,580. That of this amount, there was in that portion of Custer county detached therefrom to aid in the construction of Yellowstone county the sum of $485,841, and within the county of Custer as it existed after the creation of Yellowstone county, the sum of $898,739. Facts are then alleged which, it is claimed, show that after the deduction of that portion of the assessment which was made upon the property of the railroad, the portion of the debt of $164,000 of Custer county on the 1st of March, 1883, as above stated, which should be apportioned to Yellowstone county, was $57,547.60, and that to be apportioned to Custer county as it existed after the division was $106,452.46.

It is also alleged that after the approval of the act of February 26, 1883, the board of commissioners of the appellant, at different times, requested the board of commissioners of respondent to meet and apportion the said indebtedness; that by a resolution of the commissioners of the appellant, adopted at a meeting of such board held at the county seat of the appellant on the 6th of September, 1883, of which the board of commissioners of the respondent had due notice, the board of commissioners of the respondent were requested to meet the board of commissioners of appellant at the court-house at such county seat

on the 8th of October, 1883, for the purpose of adjusting and apportioning the said indebtedness of the two counties as required by law. That although the board of commissioners of appellant were in session for that purpose at the time and place mentioned in the resolution, the board of commissioners of the respondent neglected and refused to meet with them, and no one of the commissioners of the appellant met the commissioners of the respondent at such time and place. That on the 11th of March, 1884, two of the commissioners of the respondent met two of the appellant's commissioners at the court-house, at the county seat of appellant, for the purpose of apportioning the above indebtedness, but that the board of commissioners of the respondent did then and there wholly neglect and refuse to apportion or to assist in apportioning the said indebtedness. That the respondent has ever since refused, and does now still refuse, to apportion with the appellant the said indebtedness as required by law, or to pay the same or any part thereof. That the respondent has withheld the above sum from the appellant by unreasonable and vexatious delay since the 8th of October, 1883. Judgment is therefore demanded for the above sum of $57,547.60, with interest at the lawful rate from the 8th of October, 1883. That the said respondent, by its board of county commissioners, be required to issue a warrant or warrants upon the treasurer of the said county of Yellowstone for the sum of $57,547.60 and interest from October 8, 1883, to the county commissioners of the said county of Custer, and such other and further relief as to the court may seem just in the premises."

To this complaint the respondent filed a demurrer, as follows: "1. There is a defect of parties defendant, in that there is no designation of parties against whom a writ of mandate might issue; 2. That several causes of action have been improperly united, in that an action for a money judgment against Yellowstone county has been joined with an action to procure a writ of mandate against the commis-

sioners thereof; and in that said causes of action were not separately stated as required by subdivision 2 of section 83 of the Code of Civil Procedure of Montana territory; 3. That said complaint does not state facts sufficient to constitute a cause of action against said Yellowstone county; 4. That said complaint is ambiguous, unintelligible and uncertain, in that: 1. Said complaint alleges the cost of the buildings therein described, as shown by the books of the county commissioners, and does not allege the actual cost thereof; 2. Said complaint shows that the indebtedness, made the basis of said cause of action, has never been adjusted as provided in the act therein referred to, and that it has never been legally determined whether Custer county is indebted to Yellowstone, or Yellowstone county to Custer; 3. Said complaint shows that the demand therein set forth is not based upon the assessment of the year 1882 as a standard."

After the filing of this demurrer, and before action was had by the court thereon, the respondent filed a motion to strike out all that portion of the complaint which referred to the property of the Northern Pacific Railroad Company, and which related to the reduction of the assessment of Custer county for the year 1882, by excluding the amount of the assessed valuation of such railroad property, for the reason that these allegations were immaterial, irrelevant and surplusage; and also to strike out that portion of the prayer of the complaint which referred to the writ of mandate.

The court first acting upon the motion overruled that portion thereof which referred to the property of the railroad company, and the reduction of the assessment of Custer county for 1882, by the assessed valuation of such property, and sustained it as to that portion of the prayer of the complaint which related to the writ of mandate. Afterwards the court sustained the demurrer; and it is from the judgment rendered in consequence of this order that this appeal is taken.

The exception to the action of the court in sustaining the motion to strike out that part of the prayer of the complaint which referred to a writ of mandate was properly saved in a bill of exceptions. But in relation to this, it is needless to say more than what both parties seem to agree upon in their argument, that this error, if error at all, is immaterial. The prayer is no part of the complaint; and under the prayer for general relief, at the close of the complaint, the respondent would be entitled to any relief which the material allegations of the complaint, if sustained, would warrant or would justify the court in awarding.

In relation, therefore, to the questions presented by the demurrer, the complaint stands, to all intents and purposes, the same as if no such motion had been made.

In relation to the alleged ground of demurrer, that several causes of action have been improperly joined, it may be said that the complaint undertakes to set forth those facts under which it was contemplated by the statute that an indebtedness should arise, and upon which the appellant claims that it is entitled to judgment. The act provides for the manner in which this indebtedness, when ascertained, shall be satisfied, viz., by warrants drawn by the commissioners of the debtor county upon its treasury. The facts which it is necessary to allege to establish the indebtedness are necessarily the same which would be required to obtain the writ of mandate. To sustain the demurrer, therefore, upon the ground of misjoinder of actions, would be to deny the appellant any relief whatever; for he must necessarily allege the same facts to obtain a writ of mandate that he must also allege to establish the indebtedness. It is admitted, however, by the respondent that the action of the court in sustaining the motion to strike out this portion of the prayer of the complaint practically disposes of the first two grounds of demurrer.

The grounds of demurrer alleged in division 3, and subdivision 2 of division 4 thereof, present in substance the same question, which is as follows: When the commission-

ers of both counties failed to meet and adjust the indebtedness between them on the first Monday of March, 1883, as provided for in section 3 of the act, can the district court now determine such indebtedness? or in other words, does it have jurisdiction of this action? Although want of jurisdiction is made a special and distinct ground of demurrer, yet the objection may be taken at any time, and, if this question be raised under the division or subdivision of the demurrer referred to, the demurrer should be sustained, and the action be dismissed. The indebtedness, if any, is one wholly created by the statute. Without a provision for the existence of such indebtedness by the respondent, the liability for the whole of the indebtedness of Custer county, as it existed immediately before the creation of Yellowstone county, would rest upon the appellant. The power to divide the old county and create the new, and to fix the conditions of such division and creation, is essentially political in its nature, and inherent in the law-making power. *Laramie County* v. *Albany County*, 92 U. S. 307.

The legislative assembly had the power to prescribe, and did prescribe, the conditions upon which the county of Yellowstone should be created. One of these was that it should pay its proportion of the indebtedness of the old county of Custer, over and above the cost of the public buildings, real estate, and money in the treasury of and belonging to Custer county. No doubt, in the eyes of the legislative assembly, as is apparent upon the very face thereof, this provision was proper, equitable and just. When, by the terms of this act, did this indebtedness arise? Section 2 of the act provides that the indebtedness of the county of Custer, as the same shall exist on the 1st day of March, 1883, shall be apportioned between the said county and the county of Yellowstone; and then the provisions for the manner of the apportionment follow. This was not merely the recognition of a moral right in Custer county, and a corresponding moral obligation upon Yellowstone county in respect to this indebtedness, to be afterwards erected into a legal right

and corresponding legal obligation by the action of the county commissioners of both counties at their meeting on the first Monday of March, 1883, as provided in section 3; but it was then and there the creation, upon the 1st day of March, 1883, of a legal right in Custer county to have paid to it, and a legal obligation upon Yellowstone county to pay to the appellant, in the manner provided in the act, its proportion of the indebtedness as it existed upon the 3d of March, 1883.

We entertain no doubt but that the payment of such indebtedness may be enforced by judicial authority. It is claimed by the respondent that section 3, which provides for the meeting of the commissioners of both counties, and the adjustment by them of the indebtedness, constituted them, when thus assembled, a tribunal having the sole power to ascertain the amount of such indebtedness, and the exclusive jurisdiction to enforce the payment thereof. It may be generally the case that where the statute which creates an indebtedness in such an instance as this also provides a tribunal to apportion the same, that a resort to such tribunal must be had to the exclusion of any other. The power to ascertain the amount and make the apportionment requires examination and the exercise of judgment, and is, therefore, necessarily judicial in its character. See *People* v. *Alameda County*, 26 Cal. 642. But in such case the law-making power creating the indebtedness should have the power to call into being a tribunal possessing judicial functions. The very fact that these commissioners when so assembled, in order to perform the duties imposed, would be called upon to exercise judicial functions, is fatal to their judicial authority. The legislative assembly cannot create such a tribunal. Section 1907 of the Revised Statutes of the United States provides that "the judicial power in New Mexico, Utah, Washington, Colorado, Dakota, Idaho, Montana and Wyoming shall be vested in a supreme court, district courts, probate courts, and in justices of the peace." Section 1874 of the same also provides that "the judges of the su-

preme court of each territory are authorized to hold court
within their respective districts in the counties wherein, by
the laws of the territory, courts have been or may be estab-
lished, for the purpose of hearing and determining all mat-
ters and causes except those in which the United States is
a party."

It will not be presumed, where any other reasonable con-
struction can be placed upon the acts of the legislative as-
sembly, that in face of these provisions it intended to erect
a tribunal which would exclude the jurisdiction of the dis-
trict court.    A reference to the act itself helps to rebut this
presumption.    The first section provides that "all laws of
a general nature, applicable to the several counties of this
territory and the officers thereof, are hereby made appli-
cable to the county of Yellowstone."    The general laws of
the territory provide that "counties may sue and be sued."
R. S. 5th div. sec. 335.    Also: "Actions against counties
may be commenced and tried in any county in the judicial
district in which the county is situated, unless such actions
are between counties; in which case they may be com-
menced and tried in any county not a party thereto."    R. S.
p. 50, sec. 58.    We do not, therefore, think that the legis-
lative assembly, by providing that the commissioners of
both counties should meet and adjust the indebtedness as it
existed on the 3d of March, 1883, intended to create a tri-
bunal which should have the exclusive power and jurisdic-
tion to determine the amount of such indebtedness, or that
no indebtedness arose until after the action of these com-
missioners.    The legislative assembly having created the
indebtedness and fixed the standard by which it should be
apportioned, recognized the fact that the amount of the in-
debtedness must be liquidated; that municipal corporations
can only act by their officers, and by this provision simply
established the means by which the adjustment and liquida-
tion of the indebtedness should be accomplished.    Such a
construction as would impute to the legislative assembly a
design to oust the jurisdiction of the courts, by establishing

a tribunal not authorized by the organic laws of the territory, will not be made, where a different and reasonable construction can be made. The above construction gives effect to the legislative will as expressed in this provision. Otherwise, if this provision should have to be interpreted as conferring exclusive power and jurisdiction upon the commissioners to determine the amount of the indebtedness and enforce its payment, or either of these powers, the provision would be invalid, as not being in compliance with the organic act.

The legislative assembly had the power to create, and did create, the indebtedness, but it did not have the power to establish a tribunal which should have the exclusive jurisdiction to determine the amount of such indebtedness, or enforce its payment. Neither do we think that the meeting of the commissioners on the first Monday of March, 1883, was essential to enable the appellant to bring this action. It appears that they did not so meet; but the commissioners of the respondent have since refused, and still refuse, to meet those of the appellant and apportion the indebtedness, as required by law. Time was not of the essence of the apportionment. There is nothing in the act which makes it so. The debt as it existed on the 1st of March was to be apportioned. Nothing thereafter could increase or diminish it. This provision was not mandatory. By the failure to meet, the rights of the parties interested were not prejudiced. Those directions which are not of the essence of the thing to be done, but which are given mainly with a view to the orderly and prompt conduct of the business, and by a failure to do which the rights of those interested will not be prejudiced, are not commonly to be regarded as mandatory; and if the act is performed, but not in the time or in the precise mode indicated, it may still be sufficient, if that which is done accomplishes the substantial purpose of the statute. Cooley's Const. Lim. 4th ed. 92. Neither do we think that the meeting of these commissioners at any time, to apportion the indebtedness, was abso-

lutely essential to the commencement of this action. This can as justly and effectually be done by the district court.

The first subdivision of the fourth ground of demurrer involves the construction of the following language, contained in section 2 of the act: "Also deducting the cost of erecting and furnishing court-house, county jail, poor-house; and also the valuation of all real estate owned by said county as shown by the books of the county commissioners." We have no doubt, from the grammatical construction of this sentence, that the cost of erecting and furnishing the court-house, county jail and poor-house was to be shown by the books of the county commissioners, as well as the valuation of the real estate. The intention of the legislature was, doubtless, to furnish an available, accurate and just standard for the apportionment of the debt. The cost of the erection and furnishing of the buildings is as much presumed to have been justly and correctly kept in these books as that of the valuation of the real estate. The commissioners, in the absence of evidence to the contrary, will be presumed to have complied with the law, which requires them to keep accounts of such costs and expenditures. R. S. 5th div. secs. 357–366.

It was the most available evidence; and, under the circumstances, doubtless the most just and accurate which could be obtained. But we think that the above intent of the legislature, by the use of the above language, is so plain from its grammatical construction that argument in relation to it, as in relation to all self-evident propositions, rather than to explain such language, is more likely to involve it in obscurity. The complaint properly made the books of the county commissioners of Custer county the evidence of the cost of both the erection and furnishing of the buildings, as well as of the valuation of the real estate. The legislative assembly had the power to make these books the standard of evidence. Cooley's Const. Lim. 5th ed. 452. Subdivision 3 of the fourth division of the respondent's demurrer raises the same question as that part of the motion

did which was made to strike out that portion of the complaint which referred to the deduction and exclusion from the assessment of 1882 the assessed valuation of the Northern Pacific Railroad. This part of the motion was over-ruled, but no exception taken. But the same question is raised by this subdivision of the demurrer. The language of section 2 of the act is: "The remainder of the indebtedness shall be divided between said counties in proportion as the taxable property in each county bears to the entire taxable property of the present county of Custer, taking as a standard thereof the assessment for the year 1882." In our opinion, the determination of this question depends upon the signification of the phrase "taxable property," as it is used in the above connection. The word "taxable" signifies liable to taxation; something of value subject to assessment, and to be levied upon and sold for taxes.

The mere assessment of property does not make it taxable. In order to render property taxable there must be the fundamental right to assess. The property of the Northern Pacific Railroad Company, mentioned in the complaint, was not legally taxable. This property was not a part of the taxable property of either the old county of Custer, or of that county as constituted after the act, or of the county of Yellowstone. Also, as was said in the opinion of the court below, in ruling upon the motion to strike out, which appears in the transcript: "Aside from this clear and plain provision, what is a fair and just apportionment of the indebtedness? Evidently that upon the basis of the valuation of taxable property; not on a basis of blunders of the assessor. This might do gross injustice, and impose inequitable burdens upon the citizens of one of the counties; it would put the assessor above the law and above the court, and legalize and perpetuate his errors.

"It is not fair to presume that the legislature ever intended to do so. But rather the contrary, which does justice and gives a reasonable construction to the plain language of the statute."

This untaxable property should be excluded from the assessment, and the assessment, after such deduction and exclusion, made the basis of the apportionment.

We are therefore of the opinion that two causes of action are not improperly joined in this complaint; that the cost of the buildings is properly shown by the books of the county commissioners; that the assessment for 1882, after excluding the untaxable property of the railroad company, is properly made the basis of the apportionment; that the apportionment of the indebtedness by the county commissioners of both counties is not necessary to enable the appellant to institute this suit; and that these commissioners, under the provisions of section 3 of the act, did not constitute a tribunal which excluded the jurisdiction of the district court.

The judgment is reversed, and cause remanded for a new trial.

*Judgment reversed.*

Wade, C. J., concurred.