STATE EX REL. NELSON, RELATOR, *v.* TIMMONS ET AL., RESPONDENTS.

(No. 4,628.)

(Submitted April 27, 1920. Decided May 4, 1920.)

[189 Pac. 871.]

*Injunction—Counties—Indebtedness—Special Elections — Notice—Board of County Commissioners—Powers—When Nondelegable.*

Injunction— Counties — Indebtedness—Special Election — Notice — Sufficiency.

1. A special election called under the provisions of Chapter 8, Extra. Session, Laws of 1919, to determine whether indebtedness should be incurred by a county to aid drought sufferers, *held* on application for injunction, not to have been invalidated by failure to post the required notice in certain precincts owing to the interruption of the mail and impassability of the roads caused by a storm, where the electors had been advised of the election through the medium of newspapers, where fraud was not charged, the number of electors voting greatly exceeding the number of votes cast at a preceding election held for the same purpose at which the proposition was defeated, and in view of the provision of the Act that failure to give notice should not invalidate an election if there was a substantial compliance with the requirements of the statute in other respects.

County Commissioners—Powers—When Nondelegable.

2. Powers involving the exercise of judgment and discretion on the part of the board of county commissioners are nondelegable.

Same—Drought Relief—Illegal Delegation of Powers.

3. *Held,* that Chapter 8, Laws of Extra. Session of 1919, contemplates that the active management of the fund created by a bond issue for the relief of drought sufferers, shall be confided to the judg-

ment and discretion of the board of county commissioners, and that therefore, under the rule above, a plan whereby purchases of seed and supplies were to be made by the applicant for relief, instead of by the board, the applicant to determine the quality and price thereof, was a departure from the mode prescribed by the Act and not permissible.

Original application by the State of Montana, on the relation of N. L. Nelson, for an injunction against J. C. Timmons and others, constituting the Board of County Commissioners, and A. A. Major, Clerk, of Sheridan County. Injunction granted.

*Messrs. Babcock & Ellery,* for Relator, submitted a brief, and argued the cause orally.

*Mr. S. C. Ford,* Attorney General, *Mr. Frank Woody,* Assistant Attorney General, and *Mr. J. J. Gunther,* for Respondents, submitted a brief; *Mr. Woody* argued the cause orally.

## Opinion—PER CURIAM.

In this proceeding, which was commenced originally in this court, the relator asks for an injunction against the board of county commissioners and the county clerk of Sheridan county, Montana, restraining them from further proceedings in connection with an election held in that county under the provisions of Chapter 8 passed by the Extraordinary Session of the Sixteenth Legislative Assembly. The complaint embraces two causes of action, the first of which, after omitting formal parts, alleges that pursuant to petitions duly filed, the said board of county commissioners decided to submit to the people of said county, at an election to be held on the twenty-fifth day of March of this year, the question of incurring an indebtedness in a sum not exceeding $400,000, to be used as provided in the said Act referred to. It is conceded that all steps, including [1] the calling of the election, were in due form; but it is alleged that in certain precincts of said county no notices were posted to the effect that such election would be held, and that in other precincts thereof notices, which were posted, were not posted for the statutory period, and that at said election 2,461

votes were cast upon the proposition submitted to the electors, and 1,512 votes were cast in favor of incurring the indebtedness and 949 against the same.

For a second cause of action it is alleged that pursuant to the vote of the electors of said county at said special election, the board is planning and arranging to put said relief measure in force and effect by issuing orders for relief to persons entitled to receive the same, and to allow such persons to secure from any person having seed, provisions or other supplies for sale, relief to the extent of the kind and quality and within the value named in said order, the person filling and acting upon such order to take from the relief applicant having such order filed a written receipt, showing the delivery to such applicant of the kind and quantities of grain, feed, *etc.*, shown upon such order, the receipt so given to be attached to the order for such grain, provisions, *etc.*, which the applicant is then to be required to surrender to the person furnishing such supplies, and such order with the receipt attached is to be forwarded by such person to the clerk of said board of county commissioners, whereupon the said board will cause to be issued a county warrant drawn upon said relief fund for the amount due for such seed grain or provisions.

It is further alleged that by reason of the failure to give the notices above referred to, the election is void, and that the manner in which the commissioners expect to proceed in handling the funds derived from the issuance of warrants or the sale of bonds issued by reason of such election is in contravention of the terms of the Act under which such indebtedness is incurred. There are other allegations to the effect that the relator is an elector, a taxpayer, and has no plain, speedy, or adequate remedy, *etc.*

The respondents, answering the first cause of action in such complaint, alleged that on the third day of January of this year a special election was held in said county under the provisions of said Act, for the purpose of incurring an indebtedness not to exceed $200,000, at which election 1,662 votes were

cast, and that the proposition submitted to the people was defeated, and that later the proceedings now under attack were instituted; that notices were properly mailed to the different precinct officials of said county, but that, by reason of a storm prevailing therein at said time, mail service was interrupted, and the operation of trains leading through said county was suspended, roads were impassable, and that this condition prevailed for several days; and that by reason thereof such copies of proclamation or notice did not reach the judges in time to be posted for the statutory period, and in some precincts did not reach them in time to be posted at all. It is further alleged, however, that in each paper of the county was published a copy of the election proclamation for two successive weeks immediately preceding said election, and that the subject matter of said election and the merits of the proposition proposed to be submitted to the voters were fully and thoroughly discussed by said newspapers, and that said matter was a subject for discussion of the inhabitants and voters of said county generally, and that the voters and public were on the day of said election, and for a long time prior thereto had been, informed of the intention to hold said election and of the fact that said election was called for said day.

There is inserted in the answer a table showing the number of persons registered in the different precincts affected and the number of votes cast at said election, and the statement is made that all persons who desired to do so did vote; that no persons were deprived of their right to vote by reason of the failure to post such proclamation or notice, and that all persons who failed to vote at said election refrained from indifference as to the result or from their willingness that the proposition submitted should be adopted and relief granted under the provisions of said law.

The respondents demurred to the second cause of action stated in the complaint. Thereupon the relator demurred to the respondents' answer above referred to, and the cause is submitted to this court upon the pleadings.

1. The question of notice as considered in the statute referring to elections under the provisions of Chapter 8, *supra,* is largely determined by section 31 thereof, which reads as follows: "This Act, and all of its provisions shall be liberally construed so as to effectuate its purpose, and a failure to give any of the notices herein provided for, or to perform any of the acts herein required, within the exact time prescribed shall not invalidate any election held hereunder, or any warrants or bonds issued, provided there has been a substantial compliance with the provisions of this Act except as to time."

It is urged that the last clause of the section, "provided there has been a substantial compliance with the provisions of this Act *except as to time,*" renders the failure to strictly comply with all the statutory provisions as to notice sufficient to invalidate the election. We think this clause, taken in connection with the wording of the section, simply means that "A failure to give any of the notices herein required within the exact time prescribed, shall not invalidate any election, * * * provided there has been a substantial compliance with the provisions of this Act *in other respects.*"

The effect of lack of notice was fully discussed by this court in *State ex rel. Patterson* v. *Lentz,* 50 Mont. 322, 146 Pac. 932, *Wright* v. *Flynn,* 55 Mont. 61, 173 Pac. 421, and *Leary* v. *Young,* 55 Mont. 275, 176 Pac. 36, and we see no reason for disaffirming the reasoning of those cases. It may well be that the statute with regard to notice should be more strictly followed in the matter of special elections than in those pertaining to general elections of which the voters are presumed to have notice; but here it appears that notice was actually published in newspapers throughout the county, and that in the precincts where no notice or insufficient notice was posted, a large number of voters actually voted. It also appears from the answer that at an earlier election held for the same purpose a much smaller number of voters exercised their franchise upon the subject in many of the precincts where insufficient notice

was given than did at the election now attached. It further appears from the answer that there was much discussion of the election in the newspapers of the county, and general knowledge and discussion of the same among the people of the county, and that all persons who desired to do so did vote, and that none were prevented from voting. There is no allegation of fraud, and the determination of the question is addressed solely to the failure to strictly follow the statute as to the posting of notice.

The statute itself, having provided that "a failure to give any of the notices herein provided for or to perform any of the acts herein required, *etc.*, shall not invalidate any election held hereunder," precludes the court from holding the election void, where it affirmatively appears from the pleadings that no fraudulent advantage has been taken or obtained, and that all who desired to do so did vote, and that the election has been conducted fairly. To hold to the contrary would be to set at naught the provisions of the Act itself.

We think, on the record as made, the election was legally held. The first cause of action is dismissed.

2. It is apparent at once that by this plan the county is [2, 3] purchasing the supplies only indirectly; that the purchases are made at retail; that the determination of the price to be paid and the quality of the goods to be purchased is referred to the judgment and discretion of the applicant, and that if the demand for relief exceeds the amount the board can supply, some applicants will receive relief to the full extent of their needs, while others will be denied any relief whatever. However convenient the plan may appear to be, and however much its operation may relieve the board of trouble and responsibility, it violates the spirit and letter of the law and cannot be approved.

Section 11 of the Act provides that the board shall purchase the supplies and furnish them "in the manner hereinafter provided."

Section 12 provides that the board shall purchase at the lowest price obtainable and in such amounts as may be required from time to time.

Section 26 provides: "If more relief is applied for than can be supplied by the board of county commissioners of any county under the provisions of this act a *pro rata* distribution shall be made among those who shall be found entitled to the benefits of this Act.    *    *    *    All relief shall be furnished at actual cost, including transportation and handling charges."

From the Act in its entirety the legislative intent is made apparent. It was the purpose of the lawmakers to confide to the judgment and discretion of the board the active management of the relief measure, to the end that the public interest should be promoted by the expenditure of the money voted, in the most advantageous manner. The statute imposes upon the board, and not upon the applicant, the duty to exercise judgment as to the kind and quantity of provisions to be furnished, the price to be paid, and the apportionment of the funds among those entitled to relief; and it is elementary that under such circumstances the authority cannot be delegated. The general rule is stated in 15 Corpus Juris, 465, as follows: "The right of a county board to delegate its authority depends on the nature of the duty to be performed. Powers involving the exercise of judgment and discretion are in the nature of public trusts and cannot be delegated to a committee or agent." The authorities supporting the text will be found cited in the notes, and need not be given here in detail.

The plan contemplated by the board undertakes to confer upon the applicant for relief the authority to make the purchases, determine the quality and price, and bind the county by his judgment.

Counsel for respondents direct our attention to the following rule announced by this court in *Morse* v. *Granite County,* 44 Mont. 78, 119 Pac. 286: "If, however, there is no question of the existence of the power to do the act proposed, the board is left free to use its own discretion in selecting the mode it

shall adopt or the course it shall pursue, and the result cannot be called in question if the course pursued is reasonably well adapted to the accomplishment of the end proposed." In this instance, however, the mode of procedure is pointed out by the statute, and the board is limited accordingly. In the *Morse Case* it is said: The board "is a body of limited powers and must in every instance justify its action by reference to the provisions of law defining and limiting these powers." ( See, also, *Edwards* v. *Lewis & Clark County,* 53 Mont. 359, 165 Pac. 297.)

In adopting and assuming to put into operation the plan referred to, the board has departed, and is departing, from the mode prescribed by the statute.

The demurrer to the second cause of action is overruled, and an injunction will issue, restraining the board and clerk from proceeding further with such plan.

*Injunction granted.*

MR. CHIEF JUSTICE BRANTLY, being absent, takes no part in the foregoing decision.