SHEKELTON, Plaintiff, *v.* TOOLE COUNTY et al., Defendants.

(No. 7,292.)

(Submitted May 15, 1934. Decided June 8, 1934.)

[33 Pac. (2d) 531.]

*Mr. Lewis P. Donovan,* for Plaintiff, submitted a brief and argued the cause orally.

*Mr. Raymond T. Nagle,* Attorney General, *Mr. C. J. Dousman,* Assistant Attorney General, and *Mr. Henry McClernan,* County Attorney of Toole County, for Defendants, submitted an original and a supplemental brief; *Mr. Dousman* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

The board of county commissioners of Toole county, being desirous of securing for the people of that county the advantages available under the provisions of Chapter 24, Laws

of the Extraordinary Session of 1933–34, on January 22, 1934, adopted a resolution providing that the county should spend $75,000 for the purpose of constructing a county courthouse. In addition to prescribing the form of question to be submitted, the resolution provided that the $75,000 should be made up of the sum of $17,781 to be granted by the government of the United States, and of the sum of $57,219 to be obtained by the issuance and sale of bonds of the county; that the bonds should bear interest at the rate of four per cent. per annum from their date, and should be repaid upon an amortization plan extending over a period of twenty years, and that a special election should be held on February 15, 1934, at which there should be submitted to the qualified registered electors of Toole county the question of making such loan and issuing such bonds.

In compliance with the Act, copies of the resolution were posted twenty days prior to the date fixed for the election. It appears, however, that there was a failure to post three or more copies of the resolution in "three or more public places in each voting precinct" in Toole county, as required by Chapter 24. The posting was complete in all precincts except three. The unincorporated town of Sweet Grass, located in Toole county, lies in three voting precincts. The county clerk failed to post three copies of the resolution in any of those three precincts; he did, however, cause five copies of the resolution to be posted in as many public places about the town of Sweet Grass. In the three Sweet Grass election precincts 150 electors were entitled to vote at the special election. At the election 18 electors of these three precincts voted for the proposition, and 95 against it. So it appears that of the 150 qualified electors of the three precincts 113 voted and 37 did not vote. Over the entire county 550 electors voted in favor of the proposed bond issue and 467 against it.

Plaintiff is a resident and taxpayer in Toole county. He instituted this action against the county commissioners of that county to enjoin the issuance of the $57,219 of bonds for the purpose of constructing a courthouse. He alleged that the

special election was void because of a failure to comply with the election laws relative to the issuance of the bonds in question, in the following respects:

(1) Failure to post three notices of the special election in each of the three election precincts at Sweet Grass, as required by section 5 (c) of Chapter 24, supra.

(2) Failure to adopt the resolution required by section 14, Chapter 188, of the Laws of 1931, within the thirty-day period after the canvass of the election vote, as therein specified.

(3) Failure to adopt a resolution in the form prescribed by sections 14 and 15 of Chapter 188, Laws of 1931.

Defendants interposed a general demurrer to the complaint.

The first ground upon which plaintiff bases his complaint is that there was a failure to post three notices of the special election in each of the three election precincts at Sweet Grass, as required by section 5 (c) of Chapter 24, supra. The section provides that copies of the resolution be posted in not less than three public places in each voting precinct, and that the posting of such copies shall take the place and be in lieu of the publication of notice of election and posting notices of election required by the general election laws.

Plaintiff contends that the posting of notices of a special election, when required by law, is mandatory, and that, unless the requirements of the statute be strictly observed, the proceedings are void. There is much respectable authority which, in a general way at least, seems to support such a view. (*Guernsey* v. *McHaley*, 52 Or. 555, 98 Pac. 158, 159; *State ex rel. Connaughton* v. *Staley*, 90 Kan. 624, 135 Pac. 602, 603.)

In 20 C. J. 97, the general rule is stated as follows: "Where, as is usually the case in special elections, the time and place for holding the same are not fixed by law but are to be fixed by some authority named in the statute after the happening of a condition precedent, the statutes as to giving notice thereof are considered mandatory, and failure to give notice or issue proclamation of such an election will render it a nullity; and this is especially true when it appears that such

failure has prevented the electors generally from participating in such election.'' It is interesting to note, however, that this rule is followed by a statement which would seem to qualify it considerably. ''But failure to give the statutory notice will not of itself invalidate a special election if the time of holding the same is fixed by law, or where it appears that the electors were in fact informed of the time, place and purpose of the election and generally voted for the candidates or upon the questions submitted; or where it appears that no different result was possible had all the voters participated in the election.'' (Id., 97.)

In *State ex rel. Connaughton* v. *Staley,* supra, the Kansas court said: ''This court has quite uniformly held that a failure to give the notice required by the statute authorizing a special election will render the proceedings void. In none of the decided cases has it ever been held that the number of electors participating or the decisive character of the vote polled affected the validity of a special election, if the notice given failed to comply with the requirements of the statute.''

Regardless, however, of what the rule may be in other jurisdictions, we think the question has been definitely decided to the contrary in this state. In the case of *Goodell* v. *Judith Basin County,* 70 Mont. 222, 224 Pac. 1110, 1115, this court said: ''We adopt the rule announced by the supreme court of· Indiana, in *Jones* v. *State ex rel. Wilson,* 153 Ind. 440, 451, 55 N. E. 229: 'All provisions of the election law are mandatory if enforcement is sought before election in a direct proceeding for that purpose; but, after election, all should be held directory only, in support of the result, unless of a character to effect an obstruction to the free and intelligent casting of the vote, or to the ascertainment of the result, or unless the provisions affect an essential element of the election, or unless it is expressly declared by the statute that the particular act is essential to the validity of an election, or that its omission shall render it void.' '' This rule was reaffirmed in the case of *Weber* v. *City of Helena,* 89 Mont. 109, 297 Pac. 455, although in that case the election was held

void because there had not been even a substantial compliance with the election statute. Again, in the recent case of *Chicago, M., St. P. & P. R. Co.* v. *Fallon County,* 95 Mont. 568, 28 Pac. (2d) 462, 463, this court followed the doctrine adopted in the *Goodell Case,* supra.

Plaintiff suggests that the exception to the rule is restricted in its application only to cases wherein a general election law was involved. The case of *Guernsey* v. *McHaley,* supra, would seem to sustain such a position. In that case the court said: "Where the object of an election and the time and place are provided by general law, the requirement as to notice is directory, and a failure of the officer charged with the duty of posting or publishing such notice to discharge his duty in that regard will not invalidate the election, and it. seems equally as well settled that, if the time of the election is to be fixed by some public authority, after the happening of some condition precedent, or if some special question is in like manner to be submitted to the voters at a regular election, the law authorizing such election, or the submission of such question, and providing for notice thereof, must be strictly followed." It must be observed, however, that in the case of *Weber* v. *City of Helena,* supra, the question involved was the validity of a special election very similar to that under consideration here. In that case the court indicated that, if there had been a substantial compliance with the statute, the doctrine adopted in *Goodell* v. *Judith Basin County* would have been applicable.

In *State ex rel. Patterson* v. *Lentz,* 50 Mont. 322, 146 Pac. 932, this court had under consideration a proceeding in the nature of a special election. It was there held: "After an election has been held, the rule as to the necessity of official proclamation and notice thereof docs not apply with the same rigor as where the proceedings are attacked before its occurrence, the rule being that no informality in the election will suffice to defeat the popular will as expressed by their votes, if in fact it appears that they had actual, though not official, notice, and voted generally."

In this case, we think there was at least a substantial compliance with the statute requiring posting, and that the people voted generally. It appears that the proposal to issue the bonds prevailed by a majority of 83 votes. If all the voters in Sweet Grass precincts 1, 2 and 3, who, though entitled to vote and did not vote, had voted against the bond issue, there would still have been a majority in favor of the issue. (Compare *State ex rel. Nelson* v. *Timmons,* 57 Mont. 602, 189 Pac. 871; *Buckhouse* v. *Joint School District,* 85 Mont. 141, 277 Pac. 961.)

Since there was a substantial compliance with the statute, and it does not appear that the result of the election would have been affected by a more strict compliance, the election should be upheld. (*Chicago, M., St. P. & P. R. Co.* v. *Fallon County,* supra; *Weber* v. *City of Helena,* supra; *Goodell* v. *Judith Basin County,* supra; *State ex rel. Patterson* v. *Lentz,* supra; 20 C. J. 97, 99.)

The second ground alleged by plaintiff is that, within the thirty-day period after the canvass of the election vote, the board failed to adopt the resolution required by section 14 of Chapter 188, Laws of 1931.

Section 7, Chapter 24, supra, provides that "all of the laws of this state governing the issuance and sale of bonds by counties * * * , in so far as the same are applicable and not in conflict with any of the provisions of this Act, shall apply to and govern all bonds issued under the provisions of this Act."

Section 14 of Chapter 188, Laws of 1931, provides that "the board of county commissioners shall, at a regular or special meeting held within thirty (30) days thereafter, pass and adopt a resolution providing for the issuance of such bonds." In this case, the resolution was not passed or adopted until after the expiration of the thirty day period. It was not done until May 9, 1934.

Here once more plaintiff contends that the language of the statute is mandatory and requires a strict compliance. Again we say that this question comes clearly within a rule

followed in the case of *Chicago, M., St. P. & P. R. Co.* v. *Fallon County,* supra. In that case the court quoted with approval the following rule from 59 C. J. 1074: "Whether a statute is mandatory or directory depends on whether the thing directed to be done is of the essence of the thing required, or is a mere matter of form. Accordingly, when a particular provision of a statute relates to some immaterial matter, as to which compliance with the statute is a matter of convenience rather than substance, or where the directions of a statute are given merely with a view to the proper, orderly and prompt conduct of business, it is generally regarded as directory unless followed by words of absolute prohibition; and the same is true where no substantial rights depend on the statute, no injury can result from ignoring it, and the purpose of the legislature can be accomplished in a manner other than that prescribed, with substantially the same results."

This assignment would seem more properly to present a situation where the directions of the statute "are given merely with a view to the proper, orderly and prompt conduct of business." It does not appear that any substantial rights have been impaired by the board's delay in adopting the resolution. On the contrary, it is apparent that the general purpose and result contemplated have been fairly and substantially accomplished.

Under the authorities hereinbefore cited, we hold that this provision of the statute should not now be declared to have been mandatory. It might, however, have been mandatory in the sense that the board could have been compelled to pass and adopt the resolution within the designated thirty days. Now that the board has acted, even out of time, such provision should fairly be viewed as directory only. (*Weber* v. *City of Helena,* supra; *Goodell* v. *Judith Basin County,* supra. Compare *Carlson* v. *City of Helena,* 39 Mont. 82, 102 Pac. 39, 17 Ann. Cas. 1233.)

The next and last objection raised by plaintiff in his complaint is that the board failed "to adopt a resolution

in the form prescribed by sections 14 and 15 of Chapter 188, Laws of 1931, within the time prescribed by law, or at all." We have already disposed of the contention that the resolution was ineffectual because not adopted within the time prescribed by law. We think, however, that the views hereinafter expressed in regard to the form of the resolution adopted are also applicable to the board's delay in adopting the resolution. A careful reading of section 7 of Chapter 24, supra, discloses the fact that sections 14 and 15 of Chapter 188, Laws of 1931, are applicable in this case only in so far as they do not conflict with any of the provisions of Chapter 24.

It is apparent from a casual reading of Chapter 24 that it was designed as an emergency measure to permit counties and other agencies to secure the benefits of the National Industrial Recovery Act (48 Stat. 195)—to borrow money from agencies of the federal government. The legislature in passing this Act obviously contemplated that there would be certain conditions and requirements stipulated by the federal government to be fulfilled before any money could be obtained. It was apparently foreseen that some of the conditions and requirements of the government would conflict with certain general laws of the state. No doubt that was the reason why it was in effect declared by section 7 of the Montana Act that the laws of the state governing issuance and sale of bonds should govern only in so far as they were applicable. The outstanding purpose as contained in the title and in the preamble, and set forth in section 1 thereof, was an announced desire to obtain relief in the existing emergency, and to obtain funds from the government of the United States, and that for the exact purpose contemplated by Congress when it enacted into law, for the benefit of the states and subdivisions thereof, what is denominated the "Emergency Relief and Construction Act," and the "National Industrial Recovery Act." It therefore seems obvious that sections 14 and 15 of Chapter 188, supra, so far as they are not in harmony with the requirements of the government in granting this loan, are not applicable. Failure to comply strictly with all provisions of

our general laws did not invalidate the proceedings. We think it can be fairly said that the board complied with the provisions of Chapter 188 as completely as it was possible for it to do and at the same time conform to the requirements prescribed by the government. Variances were necessary in order to carry out the purpose sought to be attained and to effect the general results contemplated by that Act. To hold otherwise might very well result in causing our Emergency Act (Chapter 24) to become a nullity. Such a result would not be in conformity with the elementary rule that statutes must be read together and, if possible, harmonized.

It may with propriety be observed that it was admitted in the course of the argument in this court that the delay in the adoption of the resolution of the board was due solely to the time consumed in negotiations with counsel for the government relative to the contents of the resolution and to the fact that the final form of the resolution was dictated by the representatives of the federal government. Thus the wisdom of the Montana legislature in making general laws controlling only where applicable was made manifest.

For the reasons heretofore indicated, the demurrer must be sustained. The injunction is denied.

ASSOCIATE JUSTICES ANGSTMAN, MATTHEWS and ANDERSON concur.

MR. CHIEF JUSTICE CALLAWAY, concurring: Failure to follow the directions of a statute regulating elections is not always fatal, whether the election be general or special. If there has been a substantial compliance with the law and the attack comes after the election, no fraud appearing, the defects being simply irregularities, the election will be upheld. Thus in *Lane* v. *Bailey*, 29 Mont. 548, 75 Pac. 191, the failure of a registering agent to perform his duty was not allowed to deprive qualified electors of their right to vote, and this doctrine was expressly approved in *Goodell* v. *Judith Basin County*, 70 Mont. 222, 224 Pac. 1110, in which the Indiana

rule, quoted in the majority opinion in this case, as expressed in *Jones* v. *State ex rel. Wilson,* 153 Ind. 440, 55 N. E. 229, was adopted.

I agree that sufficient notice was given, the challenge coming after election, under the rule announced in the *Goodell Case* and in *State ex rel. Patterson* v. *Lentz,* 50 Mont. 322, 146 Pac. 932. But in *Weber* v. *City of Helena,* 89 Mont. 109, 297 Pac. 455, there was not a substantial compliance with the election statutes, and we were compelled to declare the election void. In my opinion we should have followed that course in *Chicago, M., St. P. & P. R. Co.* v. *Fallon County,* 95 Mont. 568, 28 Pac. (2d) 462, which, in my opinion, was wrongly decided and should be overruled. In that case this court denied the force of mandatory statutes, regardless of the fact that there had not been a substantial compliance therewith.

In *Lane* v. *Bailey,* supra, it was held in effect that, if the number of votes affected were not sufficient to change the result, the election should not be disturbed and that course rightly is to be pursued in this case.

The election being valid, it was the duty of the board of county commissioners to pass the resolution provided for in section 14 of Chapter 188, Laws of 1931. Delay on their part will not vitiate the election; the will of the people must not be thwarted by the failure of the commissioners to do their duty. They can be compelled by an appropriate action to pass the resolution. (*Custer County* v. *Yellowstone County,* 6 Mont. 39, 9 Pac. 586.) Mandamus will compel them to discharge their duty in the premises.