GULLICKSON, PLAINTIFF, *v.* MITCHELL, SECRETARY OF STATE, DEFENDANT.

(No. 8,330.)

(Submitted May 6, 1942. Decided June 6, 1942.)

[126 Pac. (2d) 1106.]

360

362

*Mr. Howard M. Gullickson, pro se,* submitted an original and a reply brief and argued the cause orally.

*Mr. Harold G. Dean,* for Defendant, submitted an original and a supplemental brief and argued the cause orally.

*Messrs. William R. Taylor, J. Miller Smith* and *Wesley W. Wertz, amici curiae,* submitted a brief; *Mr. Wertz* argued the cause orally.

*Mr. William A. Brown, amicus curiae,* submitted a brief and argued the cause orally.

*Mr. Sherman Smith, amicus curiae,* submitted a brief and argued the cause orally.

*Mr. George Niewoehner, amicus curiae,* submitted an original and a supplemental brief and argued the cause orally.

*Mr. Mark H. Derr, amicus curiae,* submitted a brief.

*Mr. Floyd O. Small, amicus curiae,* argued the cause orally.

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

By original proceeding in this court plaintiff seeks a judicial determination, under the Declaratory Judgment Act, Revised Codes 1935, sections 9835.1 et seq., of his status as "acting" attorney general of the state of Montana.

At the general election of 1940, John W. Bonner was elected to the office of attorney general for the regular four-year term beginning the first Monday of January, 1941, and entered upon the duties of his office. Prior to his election he had become a United States Reserve officer, subject to military service, and now holds a commission as Major in the Judge Advocate General's Department. On April 20, 1942, he was ordered to report for active military service at Washington, D. C., on May 1, 1942. He immediately gave written notice thereof to the Governor, who thereupon, under the authority of Chapter 47 of the Session Laws of 1941, appointed the plaintiff, Howard M. Gullickson, as "acting" attorney general to serve in the attorney general's absence during the balance of his term.

The plaintiff, first assistant attorney general under John W. Bonner, has assumed to accept the appointment, and to enter upon duty thereunder as of May 1, 1942, and purposes to exercise all the powers and perform all the duties of the attorney general's office under the latter appointment.

The attorney general is made a member of several constitutional state boards, the most important of which is the State Board of Examiners, one of the fundamental agencies of state government. The defendant, Sam W. Mitchell, as secretary of state and as a member of those several boards, questions the right and authority of the plaintiff to serve on these boards in the capacity of attorney general, and further refuses, as secretary of state, to attest the signature of Mr. Gullickson as "acting" attorney general in connection with any official act required to be performed by the attorney general. He attacks the validity

of Chapter 47, Session Laws of 1941, with reference to the office in question, and of plaintiff's assumed status thereunder.

This court has accepted original jurisdiction as necessary ■ and proper to the complete exercise of its appellate jurisdiction, since the importance and urgency of the questions presented are apparent. (Art. VIII, sec. 3, Constitution; Rule IV, sec. 1, Rules of Court.)

Section 414, Revised Codes 1935, provides that no state officer mentioned in section 413 (including the attorney general) "must absent himself from the state for more than sixty consecutive days, unless upon business of the state or with the consent of the legislative assembly;" and section 511 provides that an office becomes vacant upon certain contingencies, including the officer's absence from the state for more than sixty days without the permission of the legislative assembly, or by his ceasing to discharge the duty of his office for the period of three consecutive months, subject to certain exceptions. With reference to executive and judicial, but not to legislative officers, Chapter 47 expressly purports to remove the application of sections 414 and 511, and also of section 4739, relating to county officers, upon absences caused by military service of the United States; the chapter further specifically declares that such an officer's absence so caused shall not create a vacancy.

The only comparable provision we find in the state Constitution is Article VIII, section 37, which provides: "Any judicial officer who shall absent himself from the state for more than sixty consecutive days shall be deemed to have forfeited his office."

Article VII, section 7, of the Constitution provides for appointment by the Governor to fill certain state offices, including that of the attorney general, if the office "shall be vacated by death, resignation *or otherwise;*" but the Constitution does not define nor specify how offices are vacated otherwise than by death or resignation, and therefore necessarily leaves the matter for definition by the legislative power. However, it does follow under the well settled doctrine of *ejusdem generis*

(*Mid-Northern Oil Co.* v. *Walker,* 268 U. S. 45, 45 S. Ct. 440, 69 L. Ed. 841, affirming 68 Mont. 550, 219 Pac. 1119; *Thaanum* v. *Bynum Irr. District,* 72 Mont. 221, 232 Pac. 528; *State ex rel. Bowler* v. *Board of Commissioners,* 106 Mont. 251, 76 Pac. (2d) 648), which is applicable to constitutional as well as statutory provisions (*Newton* v. *Weiler,* 87 Mont. 164, 286 Pac. 133), that the words ''or otherwise'' must import circumstances of the same permanent nature as ''death'' and ''resignation,'' with which they are associated. While the rule is not to be invoked where it would result in the disregard of plain language (*Burk* v. *Montana Power Co.,* 79 Mont. 52, 255 Pac. 337), there would be here no such result, since the words ''by death, resignation or otherwise'' constitute a prepositional adverbial phrase modifying the word ''vacated,'' and that word also imports finality or permanency, the usually accepted meaning of ''vacate'' being to yield up possession (*Polich* v. *Severson,* 68 Mont. 225, 216 Pac. 785), and not merely to leave temporarily.

The same thing is true of section 511, which provides that an office ''becomes vacant'' upon ten stated contingencies; the nature of each contingency is such as to indicate that the office shall become permanently vacant, and no provision is made for any restoration to office.

Thus Article VII, section 7, and section 511, both relate to conditions resulting in permanent vacancies, and not to situations in the nature of leave of absence, suspension, or relief from duty resulting in temporary vacancies.

The chief contentions of the defendant are that Chapter 47 ▮ contravenes Article VII, section 7; and that even if it does not, the legislature is without authority to entrust to an *acting attorney general* the duties imposed upon the *attorney general* by the Constitution.

As noted above, the Act, if valid, amends, so far as executive and judicial but not legislative officers are concerned, certain prior statutes providing for offices becoming vacant upon more than sixty days unauthorized absence from the state. It makes such absence result, not in a permanent vacancy of office.

but with the officer's concurrence, in something of the nature of his leave of absence, or his suspension or relief from duty, with a right, under certain conditions, to resume his office, thus resulting in a temporary vacancy in the office. Instead of that right's being contingent upon the outcome of litigation, like that of a county treasurer suspended under section 4768, it is contingent upon his complying with section 3 of Chapter 47. While, in section 5, it is said that such officer "shall be considered as having been on leave of absence during his period of active military service," thus tending to indicate that he has during his absence continued to hold the position and to be the officer, it also speaks of his being "restored to his official position," indicating that he had not continued to hold the office or to be the officer, but rather that he has been suspended therefrom. Throughout the Act, reference is to his restoration, not merely to the duties and emoluments of the office, but to the office itself. We must not permit the reference to "leave of absence" to annul the overwhelmingly expressed intent that what the officer retains during his absence, is not the office, nor even the title of it, but the mere right to be "restored to his official position" (section 5) upon complying with the provisions of section 3 of the Act.

Therefore, although the Act authorizes the appointment of an " 'acting' officer to temporarily replace" the elected officer, the legislative intent was not to establish a new class of officers for the state, from top to bottom, under the title of "acting officers," but merely to provide for the naming of officers "to temporarily replace any elected officer" (section 7). In other words, what is authorized is the appointment of an attorney general of indefinite tenure within the elected term, and not the existence of two officers, one who is the "attorney general" although detached from duty and another who is "acting attorney general." He is appointed "to temporarily replace" the elected officer. Used in that sense "to replace" is "to take the place of; to serve as a substitute for, or successor of; supplant; * * *." (Webster's New International Dictionary; Webster-

Merriam 2d Ed.) Thus the appointee, although spoken of as an "acting" officer, takes the place of the elected officer and supplants him, although temporarily and indefinitely. During the period of his service under the appointment he is the attorney general for all purposes, which would be apparent if the legislature had used the word "temporary" instead of "acting" to express the status logically resulting from his appointment "to temporarily replace" the attorney general.

Section 3 of the Act clearly expresses the same intent. It does not speak of the officer's seeking restoration of the duties and emoluments from which he has been on leave; it speaks of *"persons* seeking restoration to an elective *office,"* thus indicating that the person has not meantime held the office or the title, but merely the inchoate right to be restored to them. Any other view would involve a queer result if the person should not "seek restoration" to his office within the forty-day period after relief from military service. Could it be considered that up to that time he was the attorney general, although on leave of absence from the duties of his office, but that he then lost the title? Could it be considered that up to that time the plaintiff was "acting attorney general" but thereupon became "attorney general?" The conclusion is inescapable that what the elected officer loses by failing to avail himself of the benefits of section 3 within time, is not the office, but the right to be restored to it; and that what the appointed officer holds during the entire period of his incumbency is the office itself, for his occupancy never changes. His appointment is "for a period not to exceed the unexpired term * * * subject to the right hereinbefore set forth of the elected officer to the restoration of his position" (section 7).

It is too well settled for citation of authority that the constitutionality of an Act must be presumed and that the Act may not be declared unconstitutional unless required by an express provision of the Constitution or by necessary implication.

As noted above, the Constitution provides how the office of

attorney general shall be filled when it becomes vacant, but not how it is vacated otherwise than by death or resignation. By sections 414 and 511 the legislature therefore provided for offices becoming vacant by reason of more than sixty days unauthorized absence, and it clearly had the power to amend or limit those statutory provisions, and to provide for officers' leave of absence, or for their temporary suspension or relief from duty, with their concurrence, under certain conditions, except in so far as the result would be violative of some provision of the Constitution.

The defendant has not cited any constitutional provision, and we have found none, which forbids the enactment of statutes providing for leaves of absence for officers, or for their suspension or relief from duty, with their assent, and for temporary appointments effective during such contingency. Certainly the constitutional provision relative to permanently vacated offices is not violated by a statutory provision relative to temporary situations of the kind, where there is a temporary vacancy or lack of an incumbent. The Act does not amount to a subterfuge to do what the Constitution forbids; it deals with a situation not dealt with, nor prohibited by the Constitution. The office has not been permanently ''vacated'' within the intent of the Constitution. Appointed to fill the temporary vacancy, plaintiff is attorney general, although his appointment is temporary and indefinite and subject to termination by the elected person's restoration to office.

While the Act is poorly drawn and in many respects obscure, the intent is clear and no constitutional provision has been brought to our attention necessitating a declaration of its unconstitutionality.

Defendant contends that even if the Act is valid, the duties imposed by the Constitution upon the attorney general cannot be imposed by the legislature upon an ''acting attorney general.'' However, as we have pointed out, there is no such office as that of acting attorney general. Plaintiff being, although only temporarily and indefinitely, the attorney general, he is

vested with all the powers of the office, whether imposed by Constitution or by statute.

Such situation is not unique, and we have for years had statutes of the same ultimate effect. Thus, although there is no constitutional provision therefor, section 4768, enacted forty-five years ago, provides that the board of county commissioners, when an action is commenced against the county treasurer for official misconduct, may "suspend him from office until such suit is determined, and may appoint some person to fill the vacancy." While the word "vacancy" is used, it cannot have the meaning of permanence analogous to that of the related word in the Constitution (Art. VII, sec. 7, supra) *"vacated* by death, resignation or otherwise." For it is clear that the appointment, like one under Chapter 47, is temporary only.

Article XVI, section 5, of the Constitution provides: "There shall be elected in each county * * * one treasurer, who shall be collector of the taxes." The treasurer's duty to collect the taxes is a constitutional duty; yet it has never been suggested that the person appointed to act as treasurer during the elected officer's suspension is incompetent to collect the taxes, even though he may be considered as a temporary or acting officer. The fact is that while he serves under the appointment he is to all intents the treasurer, and that section 4768 has never been suggested as unconstitutionally conferring upon the appointee constitutional duties entrusted to the treasurer. If it were so objectionable, either the commissioners may not suspend the treasurer, which might prove disastrous, or they may not provide for the collection of taxes during his suspension, which might prove even more so.

A somewhat analogous provision exists upon the institution of impeachment proceedings, in which the Constitution, which confers certain powers upon state officers, does not provide for their suspension nor for the appointment of temporary officers to perform their duties. Yet section 11684 has provided ever since 1895 that the officer sought to be impeached "is temporarily suspended from his office" and that "his office must

.be at once temporarily filled by an appointment * * *.'' That provision has been followed and its validity apparently never ·questioned.

We refer to these statutes not to adjudicate their validity, which is not before us, but to indicate that Chapter 47 is not so unique and unprecedented in kind as to constitute a radical ·departure from accustomed governmental principles or from the spirit of the Constitution. From the viewpoint of the offi-·cer concerned, Chapter 47 does not go so far as those older statutes, since it operates to his benefit and with his assent. And ·certainly it operates to the benefit of the people by removing a disability which might otherwise tend to prevent their officers and employees from entering the military service of their coun-·try.

Nor is the conception strange to other jurisdictions. In *Gray* v. *Independence County,* 166 Ark. 502, 266 S. W. 465, 466, the question was whether a county judge suspended from office was entitled to salary during his period of suspension although acquitted. The court, in ruling that he was not entitled to the salary, said: ''The general rule is that, if the office is vacant, it becomes, as to the suspended person, for the time being, as ·though it did not exist, and, as to the public, the person appointed to fill the last vacancy is the sole incumbent of the office. (*Steubenville* v. *Culp,* 38 Ohio St. 18, 43 Am. Rep. 417; *Shannon* ·v. [*City of*] *Portsmouth,* 54 N. H. 183; *Westberg* v. *Kansas City,* ·64 Mo. 493; *Howard* v. *St. Louis,* 88 Mo. 656; *Barbour* v. *United* .*States,* 17 Ct. Cl. 149.) ''

In the case of *State* v. *Heinmiller,* 38 Ohio St. 101, the ques-·tion concerned the right of one appointed under a statute upon the suspension from office of a police officer ''to fill the temporary vacancy occasioned thereby * * *.'' While the statute mentioned ''temporary vacancy'' as occasioned by the suspension, the court said: ''That the duration of the suspension author-·ized by this section is to be measured by the duration of the va-·cancy occasioned by it, is a proposition too plain for discussion; :and it is expressly declared that the vacancy occasioned by the

suspension is temporary. A suspension from office and a removal from office convey very different ideas; * * *. In the case of suspension it is contemplated that the suspended officer may be restored to his office and hold the same by virtue of his original title, while in case of removal the title of the removed officer is permanently lost to him. The vacancy in this case being temporary, and the suspension being for the same time, of course, the suspended officer is restored to his office at the expiration of that time, unless his right and title be impaired or taken away by some other cause.''

In *Re Advisory Opinion to the Governor*, 75 Fla. 674, 78 So. 673, the court considered both the rights of an officer suspended under section 15, Article IV of the state Constitution, and those of the appointee named to hold during the suspension. The Governor's request for the opinion stated: ''In view of the fact that the 'ensuing general election' intervenes the appointment of these officers and the 'next session' of the Senate, and that the removal of an elective county officer requires the concurrence of the Senate, and he may be reinstated if the Senate does not concur or refuses to act, I have the honor to request the written opinion of the Justices of the Supreme Court as to the term of office which, under the Constitution, I shall place within the appointment and commission successors to the said officers: (1) Where the incumbent has been convicted of a felony and a supersedeas obtained pending review by the Supreme Court; (2) where the incumbent has been suspended without a conviction for malfeasance or misfeasance—whether the term mentioned in such commissions shall extend to the next session of the Senate subject to its concurrence or rejection, or should extend to the 'ensuing general election,' or otherwise.''

The court said: ''In contemplation of this section of the organic law, a suspension from office does not destroy, but merely suspends, the right acquired by an election to office. The suspended officer may be reinstated by the Governor, or, if the term for which he was elected has not expired, he auto-

matically may 'resume the duties of the office' if his suspension is not concurred in by the Senate. . Where an incumbent is suspended from office, the appointment contemplated by law to fill the office is merely to exercise all the authority of the office, the duration of the authority under the appointment depending on whether the person suspended is reinstated, or is removed, or resumes the duties of the office because of action or nonaction of the Senate. While an officer may be suspended from office 'for the commission of any felony,' the office is not 'deemed vacant' under section 298 of the General Statutes, except upon 'conviction,' and a conviction is not operative while a supersedeas is effective. When an office becomes vacant, it may be filled as the law provides.''

Chapter 47 relating, as it does, to the temporary relief from ▇ duty, leave of absence, or suspension of an officer, with his assent, rather than to a permanently vacated office, there is no valid objection to the appointment's continuing beyond an election; for as pointed out in the Florida case, supra, the two classes of situations are entirely different. The whole legislative intent of Chapter 47 was to permit the person elected to obtain ''restoration to his office,'' whether or not an election might intervene, and to permit the appointee to hold the office ''for a period not to exceed the unexpired term,'' regardless of an intervening election, subject to the elected person's right of restoration to his office. The remedy sought in that class of cases cannot be affected by the remedy provided for a dissimilar class of cases. Thus it is not material that appointments to fill offices permanently ''vacated by death, resignation or otherwise'' (Article VII, sec. 7, Constitution of Montana) have been held valid only until the next ensuing election. (*State ex rel. Patterson* v. *Lentz,* 50 Mont. 322, 146 Pac. 932.) Assuming that in this situation not treated by the constitutional provision the legislature might have applied the same rule, it clearly had no mandatory duty to do so. Its failure so to provide may reasonably have been the result of a desire to prevent the possibility of a second short-time incumbent, to the detriment of the public

service and of the first elected officer upon his restoration to office; or it may have been due to the obvious impossibility of determining before the filings close or the primary election is held, whether a possible candidate would be running for a term of two years and two months, or one day, or for nothing at all. In view of the purpose and intent of the Act, the inclusion of such provision would certainly have been no less difficult to understand than its absence may be.

Defendant further contends that John W. Bonner's office of attorney general is vacated by reason of the provision of Article VII, section 4, of the state Constitution, that "no officer mentioned in this section [including the attorney general] shall be *eligible* to, or hold any other public office except member of the state board of education during his term of office." The contention is that Bonner's appointment in the military service as a Major in the Judge Advocate General's Department is inconsistent with his retention of any right in connection with the office of attorney general, not because of incompatibility of the offices but because of the constitutional provision above mentioned.

While the authorities are divided, it seems very doubtful that a military officer holds a public office within the meaning of the constitutional provision. However, since the provision relates to eligibility to office, it can have no application to offices under the federal authority (*Foltz* v. *Kerlin*, 105 Ind. 221, 4 N. E. 439, 5 N. E. 672, 55 Am. Rep. 197), eligibility to which depends on federal laws. Both the ineligibility and the prohibition against holding other public office necessarily refer to the same offices and neither can refer to others than those under the laws of Montana.

Furthermore, the constitutional provision is, not that the office of attorney general shall be vacated upon his receiving or holding another office, but merely that he may not hold the latter. The provision, therefore, if applicable, would only serve to negative his right to hold the additional office and not to vacate that of attorney general. (22 R. C. L. 420, 421, sec. 66;

*Vogel* v. *State,* 107 Ind. 374, 8 N. E. 164.) This is not a case where the acceptance of a second incompatible office operates as resignation of the first, for in this case the military rank, if considered "public office" within the meaning of the constitutional provision, was the first, and not the second.

The further contention is made by the defendant that Article VII, section 1, requiring the officers of the executive department of the state to reside at the seat of government during their terms of office, is impinged upon by Chapter 47. However, as stated above, John W. Bonner did not vacate his office within the constitutional intent by accepting the legislative permission granted by Chapter 47. The leave of absence, relief from duty, or suspension of Bonner with his assent, and the temporary appointment of plaintiff having resulted, it is immaterial what Bonner may have done thereafter with respect to his residence, for under the temporary appointment plaintiff is the attorney general, and it is his residence which must be at the seat of government.

The further contention is made that since the Act may not lawfully apply to certain officers, such as judicial officers absenting themselves from the state of Montana more than sixty consecutive days (Article VIII, sec. 37), the entire Act is unconstitutional as to all officers. However, while the question is not now before us except as to the office of attorney general, the Act may be valid as to some officers and not as to others without contravening constitutional provisions. Should this law be held as not properly applicable to judicial officers, that does not leave it as objectionable class legislation. The Constitution has singled out the judiciary as a class to be specially dealt with in respect to absence from the state. A legislative Act dealing with absence of officers, but excluding the judiciary, can therefore not be held objectionable because of the class distinction made. It is well settled that the test of constitutionality of a statute classifying those to be affected is whether the classification has some reasonable, just and practical basis (*Cunningham* v. *Northwestern Improvement Co.,* 44 Mont. 180,

119 Pac. 554), and that it is not objectionable unless palpably arbitrary in classification. (*Hill* v. *Rae,* 52 Mont. 378, 158 Pac. 826, L. R. A. 1917A, 495, Ann. Cas. 1917E, 210.)

It is also well settled that if, when an unconstitutional tion of an Act is eliminated, the remainder is complete in itself and capable of being executed in accordance with the apparent legislative intent, it must be sustained. (*State ex rel. Evans* v. *Stewart,* 53 Mont. 18, 161, Pac. 309; *State ex rel. Esgar* v. *District Court,* 56 Mont. 464, 185 Pac. 157.) We are aware that there appears a statement by way of *dictum* in *State ex rel. City of Missoula* v. *Holmes,* 100 Mont. 256, 47 Pac. (2d) 624, 100 A. L. R. 581, that in the absence of an express legislative declaration that a judgment declaring a portion of the Act invalid shall not affect the balance of the Act, the presumption is that the legislature would not have enacted the Act except in its entirety. Even if that statement were not *dictum,* it does not correctly state the law, since it would limit the determination of the legislative intent to only the one feature, to the exclusion of others equally significant, and thus might necessitate a declaration of unconstitutionality unjustified by all the circumstances. The *dictum* is therefore expressly disapproved. Moreover, there is no indication that the legislature would not have passed the Act if it had known that the Act could not apply to the relatively few judicial officers in so far as it might seem to permit them to absent themselves in violation of the Constitution.

It should be added in conclusion that numerous other states have adopted Acts of substantially similar intent, some of which have come before the courts, with varying results. However, due to variations in the Acts themselves and in the constitutions of the several states concerned, the decisions in those cases are not of any substantial help in considering the validity of Chapter 47.

We have disposed of all substantial objections raised. Other objections have been made which need not be considered here.

Judgment is therefore ordered in accordance with this opinion.

ASSOCIATE JUSTICES ANGSTMAN and ANDERSON and HONORABLE JEREMIAH J. LYNCH, District Judge, sitting in place of MR. JUSTICE ERICKSON, absent from the State, concur.

MR. JUSTICE MORRIS:

I dissent. I approach consideration of the validity of Chapter 47 of the 1941 Session Laws in full accord with the rule applied in a long line of cases by this court to the effect that in construing a statute every doubt should be resolved in favor of its validity.

In my opinion Chapter 47 conflicts with express provisions of the Constitution in some particulars and with the tenor and spirit of that instrument in a number of others as follows:

1. It attempts to create a state office and vest in the incumbent by legislative Act power to perform the duties imposed exclusively upon a constitutional officer.

2. It attempts to create an office, the incumbent of which is charged with all of the duties and vested with all of the powers of an officer created by the Constitution, but who by reason of holding under a legislative Act is not liable to impeachment under section 17 of Article V of the Constitution, nor may such an official be otherwise removed from office.

3. It exalts the military at the expense of the civil power contrary to the provisions of section 22 of Article III, which commands that the military shall always be in strict subordination to the civil power.

4. It is not an Act in the interest of the general welfare of all the people of the state, but solely in the interest of a handful of office-holders who may desire to serve in the military forces of the United States in preference to continuing in the civil office of the state to which they have been elected. The Act is also open to attack as class legislation.

5. It violates the spirit and tenor of our laws, both constitutional and statutory, in inviting an invasion of the reserved

rights of the state guaranteed by the Tenth Amendment to the Constitution of the United States.

6. It violates section 1 of Article VII by granting a state constitutional officer a furlough, authorizing him to be absent from the seat of government for an indefinite period for purposes not relating to the duties of his office. The provisions of that section requiring all officers of the executive department to reside at the seat of government, mean actual not legal residence at the place where the officer is required to perform his official duties. The provisions of the Constitution are mandatory and prohibitory. (Article III, Sec. 29.) In recognition of that rule, the conclusion cannot be avoided that the requirement that state officials shall reside at the seat of government is a command or mandatory provision. The meaning of "residence" as used in that section has no relation to the use of that word when it is used in a law having reference to one's voting place, or where one shall be taxed under certain revenue laws. Requirement of residence at the seat of government is essential to the efficient performance of official duties.

7. It violates section 4 of Article VII, which prohibits state constitutional officers from holding any other public office.

8. It assumes to create acting officers vested with constitutional powers but who are not required to seek or receive the approval of the electorate and with the right to hold beyond the next election. A legislative Act authorizing an appointment for a term longer than that contemplated by the Constitution is ineffective. (*State ex rel. Patterson* v. *Lentz*, 50 Mont. 322, 146 Pac. 932.)

Taking up the majority opinion it is therein said that "the defendant has not cited any constitutional provision, and we have found none, which forbids the enactment of statutes providing for the suspension of officers and temporary appointments effective during such suspension."

It clearly appears that the majority have not carefully analyzed sections 17 and 18 of Article V of our Constitution. Section 17 enumerates certain state constitutional officers, includ-

378

ing the attorney general, who are liable to impeachment. In *State ex rel. Working* v. *Mayor,* 43 Mont. 61, 114 Pac. 777, this court said that the Governor and other state and judicial officers can be removed only by impeachment and further said that the constitutional provision is exclusive. The only constitutional power to suspend any of the officers enumerated in section 17 of Article V is found in section 20 of Article VII, which provides that the legislature may by law empower the Governor to temporarily suspend the state treasurer when the state board of examiners deem such action necessary to protect the moneys of the state. Section 18 of Article V provides that ''all officers not liable to impeachment shall be subject to removal * * * in such manner as may be provided by law.''

In *State ex rel. Payne* v. *District Court,* 53 Mont. 350, 165 Pac. 294, 296, the line of distinction between constitutional and legislative officers as to supervision and control by legislative power is clearly drawn. It was there said: ''Section 17, Art. V, of the Constitution, provides for the removal of certain officers by impeachment, and section 18 of the same Article declares that officers not liable to impeachment are subject to removal * * * in such manner as may be provided by law. Recalling that our Constitution is a limitation and not a grant of power, it will be seen at once that the provisions of section 18, above, added nothing to the power which the Legislature would have had in the absence of such provisions. In other words, the Legislature was left entirely free to enact such statutes as it might see fit providing for the removal of officers *other than those enumerated in section 17.*''

These constitutional provisions and court decisions summarized clearly appear to me to impel these conclusions: None of the constitutional officers mentioned in section 17, Article V, except the state treasurer, may be suspended under any constitutional provision, and the suspension of the treasurer can be done only in the precautious manner therein prescribed, and none of the officers mentioned in the section can be *removed from office except by impeachment,* while all others, including

county, municipal and school district officers, are subject to removal "in such manner as may be provided by law." This means that the legislature may by appropriate legislation provide for the removal of all officers except those mentioned in section 17 of Article V. How then can it be said that no constitutional provision can be found that "forbids the enactment of statutes providing for the suspension of officers and temporary appointments"? Was it not the obvious intent of the framers of the Constitution when they drafted sections 17 and 18 of Article V, to say to the legislature: "We, in framing the Constitution, will leave you free to exercise your inherent power and suspend or remove in such manner as you shall provide by law any and all officers except such as we shall mention in section 17 of Article V, but as to those officers you shall provide for the suspension of none except the state treasurer and him only as provided by section 20 of Article VII. And the officers enumerated in section 17, including the state treasurer, may be removed from office only by impeachment for cause?" Section 11684, Revised Codes, relative to all officers subject to impeachment, being suspended during trial, will be adverted to later.

It appears that in order to bring Chapter 47 within the bounds of the Constitution it was found necessary to discover an ambiguity in section 7 of Article VII of the Constitution. Let us see of what that ambiguity consists. That Article is in these words: "The governor shall nominate, and by and with the consent of the senate, appoint all officers whose offices are established by this Constitution, or which may be created by law, and whose appointment or election is not otherwise provided for. If during a recess of the senate a vacancy occur in any such office, the governor shall appoint some fit person to discharge the duties thereof until the next meeting of the senate, when he shall nominate some person to fill such office. If the office of secretary of state, state auditor, state treasurer, attorney-general or superintendent of public instruction shall be vacated by death, resignation or otherwise, it shall be the duty of the governor to fill

the same by appointment, and the appointee shall hold his office until his successor shall be elected and qualified.''

It will be noted that the last sentence provides that if a vacancy occurs ''by death, resignation or otherwise'' in any one of the offices mentioned, the Governor shall appoint some person to fill the vacancy. The ambiguity was discovered in the phrase ''or otherwise.'' The majority concede that if the vacancy occur by death or resignation the Governor shall appoint, but if the vacancy occur from any other cause, that is under the ''or otherwise'' clause, then the Governor has not the power to appoint to fill the vacancy but the legislature shall provide how the vacancy shall be filled. I think this is a strained, absurd and illogical construction of the ''or otherwise'' clause.

I desire to call particular attention to the wording of the majority on this point and to that end repeat it here: ''Article VII, section 7 of the Constitution provides for appointment by the Governor to fill certain state offices, including that of the attorney general, if the office 'shall be vacated by death, resignation or otherwise;' but the Constitution does not define nor specify how offices are vacated otherwise than by death or resignation, and therefore necessarily leaves the matter for definition by the legislative power.''

It is a fundamental rule of statutory construction that rules of construction shall not be resorted to unless the matter under consideration is ambiguous. This rule applies to construction of constitutional provisions as well as to construction of statutes. (*State ex rel. Gleason* v. *Stewart*, 57 Mont. 397, 188 Pac. 904; *State ex rel. Du Fresne* v. *Leslie*, 100 Mont. 449, 50 Pac. (2d) 959, 101 A. L. R. 1329.) In my judgment there is not the slightest ground for the assumption that there is an ambiguity in the provisions quoted above from Article VII, section 7. The meaning of that section is as clear and precise as it is possible to fit words of the English language together to express the intention of such men as the framers of our Constitution. They expressly provide that the Governor shall fill vacancies caused by death or resignation, and then employed the blanket phrase

"or otherwise" to provide for the filling of vacancies from any other cause in addition to the two causes expressly mentioned. To say that the framers of the Constitution intended that only vacancies occurring by death or resignation should be filled by appointment by the executive, but that when a vacancy occurs under the "or otherwise" clause the legislature should provide by law how that sort of vacancy should be filled, is a construction not supported by any established rule of statutory construction that I can discover. One naturally wonders why the framers of the Constitution did not merely delete the much abused phrase "or otherwise" and make the constitutional provision so specific that it would not be necessary for the modern jurists to tax their grammatical learning to the steenth degree to discover the hidden meaning of the untutored minds of those who drafted the provisions of our basic law. It seems to me that all that is necessary to convince one of the erroneous constructions placed upon the "or otherwise" clause of section 7, Article VII, is to place the majority opinion side by side with that provision of the Constitution, and note the clear and forceful wording of which the Constitutional provision is composed, as compared with the labored and illogical words of the majority. It would have been competent for the legislature to provide by law for filling vacancies that occurred for any cause other than death or resignation if section 7 of Article VII had provided only for the filling of vacancies from those two causes, but not otherwise.

Relative to the reference to the provisions of sections 414 and 511, Revised Codes, the right of the legislature to repeal or amend any statute cannot be questioned as a general proposition, but when any statutes, such as the two here mentioned, merely amplify some constitutional provision, care must be taken when amending or modifying such statutes to see that the new Act does not infringe upon the Constitution. The statutory provision limiting the absence from the state of certain officers to sixty days was obviously enacted to give effect to section 1 of Article VII, which requires certain state officials, including

the attorney general, to maintain their residences at the seat of government. It should be obvious to everyone that this requirement is essential to the proper discharge of the duties of the several officials, and that the word ''residence'' as used in that instance is not susceptible to the ordinary meaning of the word but was a restriction upon the place of abode of those to whom it was intended to apply.

Citation of authorities on the power of legislative bodies to provide for the suspension of public officials shows a clear misapprehension of the question before this court. No constitutional provision, no statute or court decision from any jurisdiction was cited relating to suspension from office except as an act preliminary to an investigation looking to removal of the incumbent for some delinquency in official duty. The question before this court concerns the power of the legislature to provide a way for a constitutional officer voluntarily to suspend himself by his own act, with the right to retain a hold upon the office in the event he shall desire to reassume the duties imposed by the office he abandons, and not to suspension as mentioned in Article VII, section 20. Chapter 47 is outside the realm of legislative history in so far as suspension from office is concerned, and the only precedents that may be found are such as are found in the majority opinion. The only authority on suspension that can be found in our Constitution and statutes is in sections 17 and 18 of Article V, section 20 of Article VII of the Constitution, and section 11684, Revised Codes, none of which deal with suspension for the purpose of permitting some ambitious politician to enjoy the honor and emoluments of one office while retaining his hold on another. Suspension in all cases cited by the majority were suspensions made in the interest of the public good. The provision in section 11684, Revised Codes, relating to suspension and the kind of suspension provided for in Chapter 47, have no similarity in either purpose or effect. The nondescript suspension provided for by Chapter 47 is purely in the interest of a particular class of office holders. Of course, if an official be suspended for suspected mal-

feasance or misfeasance in office, as provided by section 11684, Revised Codes, and found to be innocent, it would be a very unjust law that would deny him the right of restoration. Suspension as provided in section 11684 is an essential regulation to assure integrity in administration pending determination of charges brought against any public official.

On the question of vacancy, I think it may be admitted that the legislature may, under the "or otherwise" provision of section 7 of Article VII of the Constitution, enumerate other grounds than death and resignation that would constitute vacancies in state offices, such as impeachment, insanity, change of residence, or acceptance of an incompatible office, but I most emphatically do not agree with the contention that the legislature may say, as it has in Chapter 47, that there is no vacancy when in fact there is a vacancy. Legislative fiat cannot change the existence of an obvious fact. Mr. Bonner has abandoned the office of attorney general; he no longer discharges the duties imposed upon that office; he has accepted an office under another power in violation of a provision of the Constitution of Montana. Black is black and white is white, and arguments to the contrary are merely dogmatic assertions unsustained by any authority.

The contention that a military office is not a public office is not sustained by the authorities. To the contrary are many cases, such as *People ex rel. Ward* v. *Drake,* 43 App. Div. 325, 60 N. Y. Supp. 309; *Fekete* v. *City of East St. Louis,* 315 Ill. 58, 145 N. E. 692, 40 A. L. R. 650; *Kennedy* v. *Cook,* 285 Ky. 9, 146 S. W. (2d) 56, 132 A. L. R. 251; *Perkins* v. *Manning,* Ariz., 122 Pac. (2d) 857. In the case of *Kennedy* v. *Cook,* supra, the defendant was permitted to retain his state office as "Circuit Clerk of Wayne County" while serving temporarily with his national guard company in the United States forces but on the ground that he was commissioned by the Governor of Kentucky and held no commission from the federal government.

The fact that other states have adopted statutes similar to Chapter 47 is of no moment to the argument, in the absence of

any showing that such other states have constitutional provisions pertinent to the question like or substantially similar to ours.

Much was said in the oral argument about the grave emergency confronting our national government. On a similar occasion this court said in *State ex rel. Campbell* v. *Stewart,* 54 Mont. 504, 171 Pac. 755, 756, Ann. Cas. 1918D, 1101: ''We likewise wish to disclaim any view that the Constitution of this state is in abeyance because the nation is at war, or that the Constitution is inadequate to serve the state at such time, or that the exigency justifies or has called forth any canon of construction not applicable in a season of 'profoundest peace.' Whatever is legally done by any public agency at any time must be done either with the sanction or without the inhibition of the Constitution; for, like the national charter, it 'is a law for rulers and people, equally in war and peace, and * * * no doctrine involving more pernicious consequences was ever invented by the wit of man than that any of its provisions can be suspended, without its authority for any reason. (*In re McDonald,* 49 Mont. 454, 143 Pac. 947, L. R. A. 1915B, 988, Ann. Cas. 1916A, 1166; *Ex parte Milligan,* 4 Wall. 2, 18 L. Ed. 281.)''

It was contended in the oral argument with much earnestness that a state official, who was also a reserve officer in the military forces of the United States, when called into active service has no choice in the matter but must respond to the call. Section 305 of the appendix to Title 50 U. S. C. A., relating to the question, is not entirely clear but in my judgment exempts state officials from military service. No doubt any state official when called for military service would have to make his choice between his state office and service in the United States forces, but that he has a right to make such a choice I have not the slightest doubt. When the law on the subject is not clear, and the mode of procedure by which a state official may be relieved from military service under the United States government is not specific, it will not be presumed that the Congress intended by any legislative Act to invade the sovereign rights of the states

reserved to them by the Tenth Amendment to the Constitution of the United States. If it be conceded that the federal government may reach into the state and take by law the state's attorney general, and compel him to serve in the military forces of the United States against his will, such concession would be equivalent to the further admission that the states have no rights under the Tenth Amendment that the federal government is bound to observe. Any state official of course may resign his state office and enter the military service of the United States, but peremptorily to order a state official into the military service is a clear invasion of the reserved powers of the state.

For the reasons stated, Chapter 47 is in conflict with our Constitution and should be declared void.